# UNITED STATES DISTRICT COURT FOR
# THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RONI SUE CAIMANO, on behalf of herself and all others similarly situated, and<br><br>FRANK LOVALLO, on behalf of himself and all others similarly situated,<br><br>                              Plaintiffs,<br><br>                    vs.<br><br>HRB DIGITAL LLC, and HRB TAX GROUP, INC.,<br><br>                              Defendants. | :<br>:<br>:<br>:<br>:<br>: Case ID: 23-CV-3272<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' RENEWED MOTION TO COMPEL ARBITRATION AND TO STAY LITIGATION**

The reasons for granting Defendants' motion are straightforward. H&R Block's online contract formation process forms valid and enforceable contracts. Plaintiffs' claims are within the scope of the arbitration agreement. The arbitration agreement's terms are fully enforceable under the Federal Arbitration Act ("FAA") and Pennsylvania law. And established principles—including agency—foreclose LoVallo's attempt to circumvent arbitration.

Plaintiffs' opposition raises a litany of arguments in response. But Plaintiffs' arguments are all unavailing. And Plaintiffs' scattershot approach serves only to underscore how misguided their arguments are—indeed, those arguments are often contrary to controlling authority.

## ARGUMENT

**A.     Plaintiffs' Attacks On Contract Formation Are Baseless.**

Plaintiffs do not dispute that H&R Block's contract formation process requires checking a box and clicking a button right next to an acknowledgement that "I agree to the terms and conditions of the Electronic Communications Consent and the Online Services Agreement, which includes the requirement that any dispute be resolved through binding arbitration." Mem. 3. Nor do they deny that courts across the country, including in this District, "routinely uphold" agreements "which require users to click an 'I agree' box after being presented with a list of terms and conditions of use." *Meyer v. Uber Techs., LLC*, 868 F.3d 66, 75 (2d Cir. 2017); *see also*, *e.g.*, *Dobbs v. Health IQ Ins. Servs., Inc.*, 2022 WL 2974713, at *2-4 (E.D. Pa. July 27, 2022).

Plaintiffs malign H&R Block's process as "browsewrap." Opp. 2-3, 7-10 (citing *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849 (9th Cir. 2022)). But they are wrong; checking a box and clicking a button to assent to the terms is different from being bound "simply by continuing to use the website." *Berman*, 30 F.4th at 856. *Berman* is also distinguishable. The acknowledgment of H&R Block's Online Services Agreement was clear and conspicuous—unlike in *Berman*, where disclosure of the terms was printed in tiny gray font that was "barely legible." *Id.* at 856-57.

Plaintiffs rely on *Chilutti v. Uber Technologies, Inc.*, 300 A.3d 430 (Pa. Super. Ct. 2023), *petition for review pending* (Pa. filed Aug. 18, 2023).  Opp. 10-14.  But they have no answer to Defendants' showing that the FAA preempts *Chilutti*.  Mem. 10-12.[1]  Nor does *Chilutti* support Plaintiffs' novel argument (Opp. 12-14) that H&R Block was required to provide specific notice of the mass arbitration provisions in the Online Services Agreement.  That manufactured notice requirement also is preempted.  Because the FAA prevents states from requiring heightened notice of an arbitration clause (*see* Mem. 12, 15 (discussing *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)), states cannot require heighted notice of specific terms within the clause.

Plaintiffs next argue that the arbitration agreement is illusory and unsupported by consideration because H&R Block can modify the terms of the Online Services Agreement.  Opp. 30-32.  This argument fails too. The Online Services Agreement requires H&R Block to "provide notice" of any amendments and allows users to "reject" material changes to the arbitration agreement and to opt out of any new arbitration agreement.  Schuessler Decl. Ex. 4 §§ 11.1, 11.7, 14.3.  The Third Circuit, applying Pennsylvania law, has held that providing notice of and obtaining consent to changes means that "adequate consideration exists and the arbitration agreement should be enforced."  *Blair v. Scott Specialty Gases*, 283 F.3d 595, 604-05 (3d Cir. 2002); *see also Singh v. Uber Techs., Inc.*, 67 F.4th 550, 563-64 (3d Cir. 2023) (New Jersey law).

Last, Plaintiffs say that requiring an opt out from each arbitration agreement makes opting out illusory.  Opp. 31-32.  But they ignore that the Third Circuit *rejected* this exact argument,

---

[1] Plaintiffs half-heartedly defend *Chilutti* by saying that its rule also applies to confessions of judgment. Opp. 10 n.6.  But that "attempt to cast the rule in broader terms cannot salvage" it. *Kindred Nursing Ctrs. Ltd. P'Ship v. Clark*, 581 U.S. 246, 253 (2017).  The FAA requires courts to place arbitration agreements "on an equal plane with other contracts" in general, not a specific type. *Id.* at 252.  Confessions of judgment are not typical contracts; they are "perhaps the most powerful and drastic document known to civil law" because "[t]he signer deprives himself of every defense and every delay of execution." *Cutler Corp. v. Latshaw*, 97 A.2d 234, 236 (Pa. 1953).

holding that companies need not offer a "permanent opt-out right"; a "meaningful right to opt out of every agreement" is enough.  *Singh*, 67 F.4th at 564-65.

### B. Plaintiffs Fail To Show That The Arbitration Agreement Is Unconscionable.

#### 1. The Arbitration Agreement Is Not Procedurally Unconscionable.

First, Plaintiffs acknowledge that H&R Block's contract formation process provides notice of the arbitration agreement, but they again argue that H&R Block was required to give specific notice of the agreement's provisions relating to mass arbitrations.  Opp. 34.  That manufactured requirement finds no support in Pennsylvania law, and Plaintiffs cite none.  Moreover, as discussed above (at p. 2), any such heightened notice rule would be clearly preempted by the FAA.

Second, in response to Defendants' showing that the contract's conspicuous opt-out provision is dispositive on procedural unconscionability (Mem. 15), Plaintiffs complain about having to read the contract to know about the option to opt out.  Opp. 35.  That argument necessarily fails as a matter of law: there is a "duty to read" contracts under Pennsylvania law. *Schillachi v. Flying Dutchman Motorcycle Club*, 751 F. Supp. 1169, 1174 (E.D. Pa. 1990).

Because Plaintiffs are required to demonstrate both procedural and substantive unconscionability, the Court should reject their unconscionability objections at this first step.

#### 2. The Arbitration Agreement Is Not Substantively Unconscionable.

Plaintiffs' unconscionability objections fail at the second step too.  Plaintiffs attack four provisions: (1) the arbitration agreement's provisions relating to mass arbitrations; (2) the scope of the arbitration agreement; (3) the limitations on liability; and (4) the arbitration agreement's class waiver.  None of these terms are grossly unfair or one-sided.  *See Quilloin v. Tenet HealthSys. Philadelphia, Inc.*, 673 F.3d 221, 230 (3d Cir. 2012).

***Mass Arbitration Provisions***.  As predicted, Plaintiffs rely on *MacClelland v. Cellco Partnership*, 609 F. Supp. 3d 1024 (N.D. Cal. 2022), *appeal pending,* No. 22-16020 (9th Cir.), in

challenging the arbitration agreement's procedures for addressing coordinated mass arbitrations. But Defendants have shown that *MacClelland* is distinguishable because the agreement here tolls the statute of limitations for claims during the bellwether process. Mem. 17-18.[2]

In response, Plaintiffs argue that *MacClelland* raised broader concerns about delay. Opp. 36-37. But unlike the named plaintiffs in *MacClelland*, Plaintiffs here are not asserting their claims as part of a mass arbitration. The *MacClelland* court noted that the plaintiffs' counsel "currently represent[ed] 2,712 Verizon customers" and considered how the mass arbitration procedures in Verizon's agreement would affect those customers. 609 F. Supp. 3d at 1040-42. Here, by contrast, the two Plaintiffs have not shown that their claims even implicate the mass arbitration procedures, much less how application of those procedures would delay the resolution of their claims.

Plaintiffs' concerns are also unmoored from their appropriate context. Plaintiffs do not attempt to compare the bellwether arbitration process to alternatives for resolving many individual cases. Not even the largest arbitration providers can simultaneously arbitrate large numbers of cases. Under the AAA rules that would otherwise apply, the AAA assigns all cases to a small roster of arbitrators, who then adjudicate each claim individually. Mass Arbitration Supplementary Rules, at 8 (Jan. 15, 2024), https://bit.ly/49bKJmY. So they are resolved seriatim regardless.

Plaintiffs also ignore the virtue of an orderly bellwether process in promoting settlement. While bellwethers cannot *force* a settlement of the remaining claims in either court or arbitration, they *encourage* efficient global resolution and "enhanc[e] prospects of settlement." *Malibu Media, LLC v. John Does 1-16*, 902 F. Supp. 2d 690, 702 n.9 (E.D. Pa. 2012).

Plaintiffs argue that the mass arbitration procedures lack mutuality. Opp. 37-38. But they

---

[2] Plaintiffs cite *Achey v. Cellco P'ship*, 293 A.3d 551 (N.J. App. Div. 2023), but they fail to disclose that the New Jersey Supreme Court had agreed to review the case before the parties settled. *See* 300 A.3d 273 (N.J. 2023).

ignore that in the consumer context, mass arbitrations, just like class actions or mass torts in multi-district litigation proceedings, are by definition brought by consumers against a company and not the other way around.  Moreover, the law is clear that companies can preclude class actions in arbitration agreements.  *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333(2011).  Even for class actions, Federal Rule of Civil Procedure 23(g) imposes asymmetrical restrictions on class action plaintiffs' counsel that do not apply to defense counsel.  Simply put, that mass arbitration is a one-sided phenomenon does not and cannot mean that companies are powerless to address it.

Finally, and in all events, the mass arbitration procedures are easily severable "without disturbing the primary intent of the parties to arbitrate their disputes."  *Monfared v. St. Luke's Univ. Health Network*, 182 F. Supp. 3d 188, 193-194 (E.D. Pa. 2016).  Here, the provision states that "if any portion of this Arbitration Agreement is deemed invalid or unenforceable, it will not invalidate the remaining portions of the Arbitration Agreement."  Schuessler Decl. Ex. 4 § 11.7.

***Scope***.  Plaintiffs concede that the scope of the arbitration agreement covers the claims they are asserting in this lawsuit, instead arguing that the breadth of the arbitration agreement makes it "unconscionable and absurd."  Opp. 39-43.  But they point to nothing in Pennsylvania or Third Circuit law supporting their position.  Distinguishing the same out-of-circuit cases that Plaintiffs cite here, another court in this Circuit recently found "no support in the Third Circuit for Plaintiff's argument that no reasonable consumer would agree to the language of the Arbitration Clause."  *Jacobowitz v. Experian Info. Sols.*, 2021 WL 651160, at *3-4 (D.N.J. Feb. 19, 2021).

In addition, the Fourth and Eighth Circuits have persuasively explained why a court addressing the scope of an arbitration clause should focus on the actual claims before it, and should not assess the agreement's enforceability based on hypotheticals about its reach in the "abstract" or attempt to "define [the agreement's] outer limits."  *Mey v. DIRECTV, LLC*, 971 F.3d 284, 294

(4th Cir. 2020) (citing *Parm v. Bluestem Brands, Inc.*, 898 F.3d 869, 878 (8th Cir. 2018)).  Here, Plaintiffs' claims relate to information allegedly provided during the use of H&R Block's online tax preparation and filing services.  Those claims plainly relate to the Online Services Agreement and incorporated Privacy Policy governing the use of those services.

Finally, Plaintiffs' (erroneous) proposed interpretation of Pennsylvania law that would allow courts to invalidate arbitration agreements as overbroad is preempted by the FAA.  Arguing that an arbitration agreement is harmful because it is "too broad" necessarily rests on an assumption that a consumer is harmed by arbitration. Yet that assumption embodies the very hostility towards arbitration that the FAA prohibits.  For decades, "suspicion of arbitration as a method of weakening the protections afforded in the substantive law to would-be complainants" has been "far out of step with our current strong endorsement of the federal statutes favoring this method of resolving disputes." *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 481 (1989).  Congress enacted the FAA "precisely to still" any "cry of 'unconscionable!' [that] just repackages the tired assertion that arbitration should be disparaged as second-class adjudication." *Carbajal v. H&R Block Tax Servs., Inc.*, 372 F.3d 903, 906 (7th Cir. 2004).

**Limitation on Liability**.  This challenged provision is found outside—not within—the arbitration agreement. Accordingly, Plaintiffs' challenge to it is for the arbitrator to decide under the FAA's "rule of severability." Mem. 16 (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 447, 449 (2006); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967)).  Plaintiffs are wrong in arguing that this well-established rule applies only to delegation clauses (Opp. 33 n.16); indeed, neither *Buckeye* nor *Prima Paint* involved delegation.

Plaintiffs' challenges to that provision also are wrong on their own terms.  They ignore that the Online Services Agreement states that the limitation on liability "does not apply" in states that

do not allow for enforcement of contractual limitations on remedies. Schuessler Decl. Ex. 4 § 9.3. They also ignore that the arbitration agreement authorizes the arbitrator to award "the same remedies available in court" for individual claims, "including compensatory, statutory, and punitive damages." *Id.* Ex. 4 § 11.4. There is nothing unfair about authorizing the arbitrator to award any individualized remedies that a court can award. And, even if there were any uncertainties about the arbitrator's authority to award full individualized remedies—and there are not here—those uncertainties are for the arbitrator to resolve. *Quilloin*, 673 F.3d at 231 (addressing limitations on attorneys' fees) (citing *PacifiCare Health Care Sys. v. Book*, 538 U.S. 401 (2003)).

***Class Waiver***. Plaintiffs concede that their attack on the arbitration agreement's class waiver would be frivolous under the FAA and binding precedent. *See* Mem. 16-17. Instead, they contend that the FAA does not apply at all, arguing that Section 2 of the FAA limits the statute's reach to claims "arising out of" the underlying contract containing the arbitration clause. Opp. 46-47 (quoting 9 U.S.C. § 2). But neither the Supreme Court nor the Third Circuit has ever adopted that constrained interpretation of Section 2. On the contrary, few refrains are more consistent in the Supreme Court's FAA jurisprudence than the directive that Section 2 requires courts to enforce arbitration agreements "according to their terms."[3] And courts' "duty to enforce arbitration agreements is not diminished when a party bound by an agreement raises a claim founded on statutory rights." *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987).

Plaintiffs' proposed limitation on the scope of the FAA also offers them no help on its own terms. As just discussed, Plaintiffs' claims easily "aris[e] out of" a "transaction involving

---

[3] *E.g.*, *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1412 (2019); *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019); *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 506 (2018); *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013); *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012); *Concepcion*, 563 U.S. at 339; *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010); *Casarotto*, 517 U.S. at 688.

commerce" (9 U.S.C. § 2)—the use of H&R Block's online services for federal tax preparation and filing and related services.  *See* Mem. 6-7.[4]

## C. Plaintiff LoVallo Cannot Avoid Arbitration.

LoVallo is required to arbitrate under at least three doctrines, any one of which is sufficient.

*Agency*.  Remarkably, LoVallo ignores Defendants' showing that the spousal context makes the standards for an agency relationship much easier to satisfy.  Mem. 19-20.  He argues that agency is a "question of fact" (Opp. 26), but there are no disputed facts.  LoVallo concedes that he authorized his wife to file joint tax returns on behalf of both of them. Opp. 27.

Given that concession, his arguments against agency are frivolous.  LoVallo splits hairs when he says that he did not specifically authorize his wife to choose H&R Block and enter into an arbitration agreement. Opp. 27-28.  By giving his wife authority to file the joint tax returns on behalf of both of them, LoVallo also gave her authority to take all "proper, usual and necessary" steps to achieve that end, including entering into the Online Services Agreement governing the account and services used for that purpose. *Washburn v. Northern Healthcare Facilities, Inc.*, 121 A.3d 1008, 1012 (Pa. Super. Ct. 2015).  The FAA preempts any contrary reading of Pennsylvania law that would impose arbitration-specific hurdles on that broad grant of authority: LoVallo's argument that he had to expressly give his wife authority to agree to arbitration is just like the state-law "clear statement" rule that the Supreme Court rejected in *Kindred*.  581 U.S. at 252-54.

Because of the clear agency relationship, the Court could stop there.  But LoVallo's

---

[4] This case is thus nothing like *Calderon v. Sixt Rent a Car, LLC*, 5 F.4th 1204 (11th Cir. 2021) (cited at Opp. 46)—an outlier decision on the reach of Section 2 that has not been followed by the Supreme Court or Third Circuit.  In *Calderon*, the defendant rental car company's contract with the plaintiff "didn't contain an arbitration provision." *Id.* at 1207.  Rather, it tried to piggyback on the plaintiff's arbitration agreement with Orbitz, the website the plaintiff used to reserve the car. *Id.*  The Court held this reached too far because plaintiff's claims were solely about the defendant's alleged misconduct and not his online transaction with Orbitz. *Id.* at 1209-12.

arguments against applying equitable estoppel and third-party beneficiary doctrines are wrong too.

***Equitable Estoppel***. LoVallo first argues that equitable estoppel requires a showing of detrimental reliance. Opp. 14-16. But that requirement does not exist either in the Pennsylvania or Third Circuit cases in this context. *See* Mem. 21. LoVallo's suggestion (Opp. 15-16) that *Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022), implicitly overruled all of these cases is unfounded. That limited decision held only that federal courts may not create "arbitration-specific procedural rules" for "waiver," because the FAA instead requires federal courts to treat arbitration motions like all other motions subject to general federal procedures. *Id.* at 419 (citing 9 U.S.C. § 6). *Morgan* does not displace state substantive law on when non-signatories must arbitrate.

LoVallo next argues that he could not have knowingly sought or obtained direct benefits from the Online Services Agreement without knowing about that agreement. Opp. 16-19. But that head-in-the-sand theory does not work: he concedes that he gave his wife "permission to prepare and file our joint tax returns" and "understood" that she was doing so (LoVallo Decl. ¶¶ 5-6), including inputting on his behalf his personal information and a unique identifier certifying the accuracy of the return (Mem. 20-21). He thus "knowingly exploit[ed]" the contract by "seeking and obtaining" the benefit of having his taxes filed for multiple years. *Griswold v. Coventry First LLC,* 762 F.3d 264, 272 (3d Cir. 2014). There's nothing "indirect" (Opp. 20) about that benefit: *both* LoVallos benefitted directly from using H&R Block to prepare and file their *joint* tax returns.[5]

---

[5] The cases Plaintiffs cite are inapposite, because they do not involve one spouse authorizing another to conduct a transaction for the benefit of the couple. For example, in *County of Monmouth v. Rite Aid Corp.*, 2023 WL 2743552 (E.D. Pa. Mar. 31, 2023), *appeal filed* (Apr. 10, 2023), the court held that an arbitration provision in a contract between Rite Aid and a corporation managing pharmacy benefits did not bind an individual Rite Aid shopper who was a complete stranger to the transaction and only indirectly benefited from the reduced prescription drug prices set forth in the contract. *Id.* at *1. And in *Trina Solar US, Inc. v. Jasmin Solar Pty Ltd.*, 954 F.3d 567 (2d Cir. 2020), the solar panel contract was between an agent of the non-signatory defendant and a Chinese manufacturer, but the agent corporation was contracting "in its own right" and not on behalf of the defendant, so any benefit to the defendant was indirect. *Id.* at 569, 571-72.

Defendants also showed that LoVallo's claims implicate the Online Services Agreement and incorporated Privacy Policy, independently satisfying the test for equitable estoppel. Mem. 22-23. LoVallo responds that this test requires him to cite the Online Services Agreement in the complaint. Opp. 21-22. But the cases he cites do not support that overly narrow reading. For example, in *O'Hanlon v. Uber Technologies, Inc.* (cited at Opp. 18, 22), the Third Circuit held that the plaintiffs were not relying on Uber's terms because the premise of their claims under the Americans with Disabilities Act was that they were prevented "from partaking in or benefiting from that service agreement in the first place." 990 F.3d 757, 767 (3d Cir. 2021). By contrast, it is undisputed that Plaintiffs obtained tax preparation and filing services from H&R Block.

***Third-Party Beneficiary***. First, LoVallo argues that he is not a third-party beneficiary because his claims "arise under federal and state law" instead of the Online Services Agreement. Opp. 23. But as discussed above, his claims do "relate to" his "third-party beneficiary status" under that agreement. *Id.* (quotation marks omitted). His claims depend on the use of H&R Block's online services to prepare and file joint tax returns—something his wife did.

Second, LoVallo makes much of the language in the Online Services Agreement saying that the benefits of the agreement "are intended solely for the original purchaser of the Products and Services." Opp. 24-25 (quoting Schuessler Decl. Ex. 4 § 14.9). But the very next sentence makes clear that this language reflects a prohibition on "assign[ing], delegat[ing] or otherwise transfer[ring] this Agreement." *Id*. No assignments or transfers occurred here; rather, in a (commonplace) joint filing situation like this one, *both* taxpayers receive the benefit of the "original purchaser['s]" use of H&R Block's online tax preparation and filing services.

## CONCLUSION

The Court should enter an order (i) compelling Plaintiffs to arbitrate their claims on an individual basis; and (ii) staying this action pending the outcome of those arbitrations.

Date: February 5, 2024

Respectfully submitted,

**THE GOODHEART FIRM, P.C.**

By: /s/ *Mark B. Goodheart*
    Mark B. Goodheart, Esq. (PA Bar #203651)
    529 16th Street, Suite 100
    Philadelphia, Pennsylvania 19146
    Telephone: (215) 710-0909
    Facsimile: (267) 857-0337
    mark@thegoodheartfirm.com

    -and-

**BERKOWITZ OLIVER LLP**

    Anthony J. Durone, Esq. (MO Bar #43872)
    Stacey R. Gilman, Esq. (MO Bar #55690)
    2600 Grand Boulevard, Suite 1200
    Kansas City, Missouri 64108
    Telephone:   (816) 561-7007
    Facsimile:    (816) 561-1888
    adurone@berkowitzoliver.com
    sgilman@berkowitzoliver.com

***ATTORNEYS FOR DEFENDANTS HRB TAX GROUP, INC. AND HRB DIGITAL LLC***

## CERTIFICATE OF SERVICE

I certify that on February 5, 2024, I electronically filed the foregoing document with the Clerk of the Court for the U.S. District Court, Eastern District of Pennsylvania, using the electronic case filing system of the court, which sent notification of such filing to all CM/ECF participants.

/s/ *Mark B. Goodheart*
Mark B. Goodheart, Esq. (PA Bar #203651)

***Attorney for Defendants HRB Tax Group, Inc.
and HRB Digital LLC***
