IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RONI SUE CAIMANO, on behalf of herself
and all others similar situated, and

FRANK LOVALLO, on behalf of himself and
all others similarly situated,

                Plaintiffs,

     v.

H&R BLOCK, HRB DIGITAL LLC, and
HRB TAX GROUP, INC.,

              Defendants.

CIVIL ACTION
NO. 23-3272

## OPINION

**Slomsky, J.**                                                         **July 3, 2024**

### TABLE OF CONTENTS

I.    **INTRODUCTION**........................................................................................................ 3

II.  **BACKGROUND** ........................................................................................................... 3

     **A. Plaintiffs Agree to Defendants' Online Services Agreement, Including**

        **the Arbitration Provision** ........................................................................................ 4

        1. Plaintiff Caimano ................................................................................................ 4

        2. Plaintiff Frank LoVallo and his Wife, Michelle LoVallo ............................................. 9

     **B. Plaintiffs Did Not Opt Out of the Arbitration Provision Within**

        **Thirty (30) Days** ..................................................................................................... 9

     **C. Plaintiff Caimano Files Suit and Defendants Remove Case**

        **to Federal Court** ................................................................................................... 10

**D. Defendants' Renewed Motion to Compel Arbitration**

**and Plaintiffs' Response in Opposition** ........................................................11

**III.   ANALYSIS** .............................................................................................................. 12

**A. Standard of Review** ........................................................................................ 12

1. Arbitrability is Apparent on the Face of the Amended Complaint ............................ 13

and Supporting Documents ........................................................................ 13

2. Plaintiffs Have Not Presented Reliable Additional Evidence Sufficient .................. 15

to Place the Agreement to Arbitrate in Issue ........................................................ 15

**B. Arbitration Provision in the Online Services Agreement Formed**

**a Valid and Binding Contract** ...................................................................... 16

1. Defendants' Acknowledgment Process Formed a Valid and Binding

Agreement to  Arbitrate ............................................................................ 17

2. The Arbitration Provision in the Online Services Agreement

is Not Unconscionable............................................................................ 20

a. The Arbitration Provision is not Procedurally Unconscionable ........................... 21

**C. Plaintiff Frank LoVallo is Subject to Arbitration Based on Agency Principles** ..... 24

**D. Plaintiffs' Claims Fall within the Scope of the Arbitration Provision** .................... 29

**IV.   CONCLUSION** ...................................................................................... 31

## I.      INTRODUCTION

Before the Court is the Renewed Motion to Compel Arbitration and to Stay Litigation filed by Defendants' H&R Block, HRB Digital LLC, and HRB Tax Group Inc. ("Defendants").  (Doc. No. 23.)[1]  Defendants move to stay this case pending arbitration, arguing Plaintiffs are subject to a binding arbitration provision contained in their Online Services Agreement.  (See id. at 1.) Plaintiffs Roni Sue Caimano ("Plaintiff Caimano" or "Caimano") and Frank LoVallo ("Plaintiff LoVallo" or "LoVallo"), on behalf of themselves and all others similarly situated ("Plaintiffs"), oppose the Motion, arguing that Defendants cannot compel arbitration of their claims because Plaintiffs did not agree to arbitration.  (See Doc. No. 24 at 2.)  Additionally, Plaintiffs argue that the Online Services Agreement was procedurally and substantively unconscionable.  (See id. at 30-47.)  Defendants' Motion is now ripe for disposition.  For reasons that follow, the Court will grant Defendants' Renewed Motion to Compel Arbitration and Stay Proceedings.

## II.     BACKGROUND

This suit arises out of Plaintiffs' use of Defendants' online services to prepare and file tax returns.  (See Doc. No. 16 at 3-4.)  Defendants provide taxpayers with online assistance in preparing and filing their federal, local and state tax returns.  (See id. at 6.)  Plaintiff Caimano is a citizen of Pennsylvania who used Defendants' online tax preparation and filing services from 2020 to 2022.  (See id. at 3.)  Plaintiff LoVallo is also a citizen of Pennsylvania, and he and "his spouse [Mrs. LoVallo] used [Defendants'] online preparation and filing services to prepare and file joint tax returns with [him] from 2019-2022."  (See id. at 4.)

---

[1] Defendants withdrew their first Motion to Compel Arbitration.  (Doc. No. 22.)

A. **Plaintiffs Agree to Defendants' Online Services Agreement, Including the Arbitration Provision**

1. Plaintiff Caimano

Plaintiff Caimano prepared and filed her tax returns for the years 2020 to 2022 using Defendants' online platform. (See id. at 3.) In order to use Defendants' online services, Caimano was required to agree to Defendants' Online Services Agreement (the "Agreement"). (See Doc. No. 23-1 at 3.) When completing her tax returns on Defendants' platform, Caimano was required to click a "Check Box" button agreeing to be bound by an arbitration provision. (See id.; see also Doc. No 23-5) ("I agree to the terms and conditions of the Electronic Communications Consent and Online Services Agreement, which includes the requirement that any dispute be resolved through binding arbitration.") After clicking the "Check Box" Button agreeing to the terms and conditions of the Electronic Communications Consent and Online Services Agreement, the user must click "Next." (See id.) If a user attempts to click "Next" without clicking the "Check Box" button acknowledging the Online Services Agreement, the user would not be able to proceed with the tax services because the webpage would display a message in red stating "[y]ou must agree to the Electronic Communications Consent, Online Services Agreement and Privacy Notice." (See id. at 4.)

In addition, when Caimano acknowledged the Online Services Agreement by clicking the "Check Box," she could also view the complete Agreement by clicking the words "Online Services Agreement" next to the "Check Box." (See Doc. No. 23-5.) This link takes the user to a webpage with the complete Online Services Agreement, including the arbitration agreement. (See id.) The Online Services Agreement provides as follows:

> This Online Services Agreement ("Agreement") is a contract between you and HRB Digital LLC and HRB Tax Group, Inc. (together, "H&R Block," "we," or "us"). This Agreement governs your use of Products and Services . . . provided by

H&R Block, H&R Block Affiliates . . . and H&R Block's third party independently owned franchisees.

Be sure that you carefully read and fully understand this Agreement.

(A) You may use H&R Block's Products and Services only if you agree to all the terms of the Agreement.

(B) You are considered to have agreed to all the terms of the Agreement if you check your acceptance of the terms of the Agreement during the creation of your account, or if you otherwise access, copy, or use any Products and Services.

(C) You do not have the right to access and use the Products and Services if you do not agree to the terms of this Agreement.

THIS AGREEMENT INCLUDES A MUTUAL BINDING ARBITRATION AGREEMENT . . . THAT REQUIRES RESOLUTION OF DISPUTES BY INDIVIDUAL ARBITRATION UNLESS YOU OPT OUT . . .

. . .

**Scope of Arbitration Agreement**. You and the H&R Block Parties agree that all disputes and claims between you and the H&R Block Parties shall be resolved through binding individual arbitration unless you opt out of this Arbitration Agreement using the process explained below. However, to the fullest extent permitted by applicable law, either you or the H&R Block Parties may elect that an individual claim be decided in small claims court, as long as it is brought and maintained as an individualized claim and is not removed or appealed to a court of general jurisdiction. All issues are for the arbitrator to decide, except that issues relating to the arbitrability of disputes and the validity, enforceability, and scope of this Arbitration Agreement, including the interpretation of and compliance with sections 11.2, 11.4, and 11.6 below, shall be decided by a court and not an arbitrator. The terms "H&R Block Parties" or "we" or "us" in this Arbitration Agreement include HRB Digital LLC, HRB Tax Group, Inc., and Emerald Financial Services, LLC, along with their predecessors, successors, and assigns, and each of the past, present, and future direct or indirect parents, subsidiaries, affiliates, officers, directors, agents, employees, and franchisees of any of them.

**Arbitration Opt Out:** You may opt out of this Arbitration Agreement within 30 days after you accept this Agreement by filling out the form at www.hrblock.com/goto/optout, or by sending a signed letter to Arbitration Opt Out, P.O. Box 32818, Kansas City, MO 64171. The letter should include your printed name, address, the first five digits of your Social Security Number, and the words "Reject Arbitration." If you opt out of this Arbitration Agreement, any prior arbitration agreement shall remain in force and effect.

**Commencing arbitration.** You or we may commence an arbitration proceeding only if you and we do not reach an agreement to resolve the dispute or claim during the Informal Resolution Period (defined below).

**(A) Pre-arbitration notice of dispute.** A party who intends to seek arbitration must first mail a written Notice of Dispute ("Notice") to the other party. The Notice to the H&R Block Parties should be addressed to: H&R Block-Legal Department, Attention: Notice of Dispute, One H&R Block Way, Kansas City, MO 64105. The Notice to you will be sent to the last known address on file with the H&R Block Parties. The Notice must be on an individual basis and include all of the following: (1) the claimant's name, address, telephone number, and email address; (2) the nature or basis of the dispute or claim; (3) the specific relief sought; and (4) the claimant's signature.

**(B) Informal Settlement Conference.** After the Notice containing all of the information required above is received, within 60 days either party may request an individualized discussion (by telephone or videoconference) regarding informal resolution of the dispute ("Informal Settlement Conference"). If timely requested, the parties will work together in good faith to select a mutually agreeable time for the Informal Settlement Conference. You and our business representative must both personally participate in a good-faith effort to settle the dispute without the need to proceed with arbitration. The requirement of personal participation in an Informal Settlement Conference may be waived only if both you and we agree in writing. Any counsel representing you or us may also participate; however, if you have retained counsel, a signed statement is required by law to authorize the H&R Block Parties to disclose your confidential tax and account records to your counsel. Any applicable statute of limitations will be tolled for the claims and relief set forth in the Notice during the period between the date that either you or we send the other a fully complete Notice, until the later of (1) 60 days after receipt of the Notice; or (2) if a Settlement Conference is timely requested, 30 days after completion of the Settlement Conference (the "Informal Resolution Period"). The parties agree that the existence or substance of any settlement discussions are confidential and shall not be disclosed, except as provided by applicable law.

**(C) Enforcement of pre-arbitration requirements.** The Notice and Informal Settlement Conference requirements are essential so that you and we have a meaningful chance to resolve disputes informally before proceeding to arbitration. A court will have authority to enforce this section 11.2, including the power to enjoin the filing or prosecution of an arbitration or the assessment of or demand for payment of fees in connection with an arbitration, if you or we do not first provide a fully complete Notice and participate in a timely requested Informal

Settlement Conference. In addition, unless prohibited by applicable law, the arbitration administrator shall not accept, assess or demand fees for, or administer an arbitration commenced during the Informal Resolution Period.

**How arbitration works.** Arbitration shall be conducted by the American Arbitration Association ("AAA") pursuant to its Consumer Arbitration Rules ("AAA Rules"), as modified by this Arbitration Agreement. The AAA Rules are available on AAA's website www.adr.org. If AAA is unavailable or unwilling to administer arbitration consistent with this Arbitration Agreement, the parties shall agree to, or the court shall select, another arbitration provider. Unless the parties agree otherwise, any arbitration hearing shall take place in the county of your residence. If you accept this Agreement outside the United States, the arbitration hearing shall take place in the county in which you last resided in the United States. The arbitrator will be either a retired judge or an attorney specifically licensed to practice law in the state of your residence and selected by the parties from the arbitration provider's national roster of arbitrators. The arbitrator will be selected using the following procedure: (1) the arbitration provider will send the parties a list of five candidates meeting this criteria; (2) if the parties cannot agree on an arbitrator from the list, each party shall return its list to the arbitration provider within 10 days, striking up to two candidates, and ranking the remaining candidates in order of preference; (3) the arbitration provider shall appoint as arbitrator the candidate with the highest aggregate ranking; and (4) if for any reason the appointment cannot be made according to this procedure, the arbitration provider will provide the parties a new list of five candidates meeting the above criteria until an appointment can be made.

**Waiver of right to bring class action and representative claims.** All arbitrations shall proceed on an individual basis. The arbitrator is empowered to resolve the dispute with the same remedies available in court, including compensatory, statutory, and punitive damages; attorneys' fees; and declaratory, injunctive, and equitable relief. However, the arbitrator's rulings or any relief granted must be individualized to you and shall not apply to or affect any other client. The arbitrator is also empowered to resolve the dispute with the same defenses available in court, including but not limited to statutes of limitation. You and the H&R Block Parties also agree that each may bring claims against the other in arbitration only in your or their respective individual capacities and in so doing you and the H&R Block Parties hereby waive the right to a trial by jury, to assert or participate in a class action lawsuit or class action arbitration, to assert or participate in a private attorney general lawsuit or private attorney general arbitration, and to assert or participate in any joint or consolidated lawsuit or joint or consolidated arbitration of any kind. If, after exhaustion of all appeals, a court decides that applicable law precludes enforcement of any of this section's limitations as to a particular claim or any particular request for a remedy for a claim (such as a request for public injunctive relief), then the parties agree that the particular claim or the particular request for a remedy (and only that particular claim or particular request for a remedy) must

remain in court and be severed from any arbitration. No arbitration shall proceed in any manner as a class action arbitration, private attorney general arbitration, or arbitration involving joint or consolidated claims, unless all parties consent in writing.

**Arbitration costs.** Payment of all filing, administrative, case-management, arbitrator, and hearing fees will be governed by AAA Rules, but if you inform us that you cannot afford to pay your share of the fees, we will consider advancing those fees on your behalf and will do so if required by applicable law. In addition, we will reimburse you for your share of the fees at the conclusion of the arbitration (regardless of who wins), so long as (i) you complied with sections 11.2 and 11.4 above and section 11.6 below, and (ii) neither the substance of your claim nor the relief you sought was determined to be frivolous or brought for an improper purpose as measured by the standards set forth in Federal Rule of Civil Procedure 11(b); otherwise, the payment of fees will be governed by AAA Rules and you agree to reimburse the H&R Block Parties for all fees advanced on your behalf.

**Arbitration of similar claims.** If 25 or more claimants submit Notices or seek to file arbitrations raising similar claims and are represented by the same or coordinated counsel (regardless of whether the cases are submitted simultaneously), all of the cases must be resolved in arbitration in stages using staged bellwether proceedings if they are not resolved during the Informal Resolution Period. You agree to this process even though it may delay the arbitration of your claim. In the first stage, each side shall select 10 cases (20 cases total) to be filed in arbitration and resolved individually by different arbitrators, with each case assigned to an arbitrator from the claimant's home state. In the meantime, no other cases may be filed in arbitration, and the AAA shall not accept, assess or demand fees for, or administer arbitrations that are commenced in violation of this section. The arbitrators are encouraged to resolve the cases within 120 days of appointment or as swiftly as possible, consistent with principles of fundamental fairness. If the remaining cases are unable to be resolved after the conclusion of the first stage bellwether proceeding, each side shall select up to another 10 cases (20 cases total) to be filed in arbitration and resolved individually in accordance with this Arbitration Agreement. During this second stage, no other cases may be filed in arbitration. If any claims remain after the second stage, the process will be repeated until all claims are resolved through settlement or arbitration, with two alterations. First, a total of 50 cases may be filed each round (unless a higher number of cases is mutually agreed upon in writing). Second, arbitrators who were assigned cases in previous rounds may be appointed to new cases. If this section 11.6 applies to a Notice, the statute of limitations applicable to the claims and relief set forth in that Notice shall be tolled from the beginning date of the Informal Resolution Period until that Notice is selected for a bellwether proceeding, withdrawn, or otherwise resolved. A court will have authority to enforce this section 11.6, including to enjoin the filing, assessing or demanding fees for, administration of, or prosecution of arbitrations.

**Other terms.** This Arbitration Agreement shall be governed by, and interpreted, construed, and enforced in accordance with, the Federal Arbitration Act and other applicable federal law. Except as set forth above in section 11.4, if any portion of this Arbitration Agreement is deemed invalid or unenforceable, it will not invalidate the remaining portions of the Arbitration Agreement. Notwithstanding any provision in this Agreement to the contrary, we will not make any material change to this Arbitration Agreement without providing you with an opportunity to reject that change by following the directions in the notice of changes. Rejection of any future change will not impact this or any other arbitration agreement between you and the H&R Block Parties. No arbitration award or decision will have any preclusive effect as to any issues or claims in any dispute, arbitration, or court proceeding where any party was not a named party in the arbitration, unless and except as required by applicable law.

(Doc. No. 23-7 at 1-19.)

2. Plaintiff Frank LoVallo and his Wife, Michelle LoVallo

Plaintiff Frank LoVallo and his wife, Michelle LoVallo, also prepared and filed their joint tax returns using Defendants' online tax platform from 2019 to 2022. (See Doc. No 16 at 4.) The account created in Mrs. LoVallo's name was used in 2022 to click the "check box" button and accept the Online Services Agreement, including the arbitration provision, just as Plaintiff Caimano did, as described supra. (See Doc. No. 23-1 at 4.) When the LoVallos filed their joint tax return using Defendants' online services, they provided both spouses' names, dates of birth, and social security numbers. In addition, both Plaintiff LoVallo and Mrs. LoVallo were required to sign the tax return and attest to its accuracy. (See id.)

**B.  Plaintiffs Did Not Opt Out of the Arbitration Provision Within Thirty (30) Days**

As set forth above, the Online Services Agreement permits a client to "opt out" of the arbitration provision contained therein within thirty (30) days after accepting the Agreement. (Doc. No. 23-1 at 4.) A client may do so by filing a form online or mailing a letter to Defendants. (See id. at 5.) Plaintiffs did not do either, so they did not opt out of the arbitration provision. (See id.)

### C.       Plaintiff Caimano Files Suit and Defendants Remove Case to Federal Court

On July 21, 2023, Plaintiff Caimano, on behalf of herself and others similarly situated, filed suit in the Court of Common Pleas of Philadelphia.  (See Doc. No. 1 at 2.)  In the Complaint, Plaintiff Caimano alleged claims against Defendants for violating: (1) the Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 Pa. C.S. § 5701, et seq., and (2) the provisions of the Internal Revenue Code on Confidentiality and disclosure of returns and return information to prevent unauthorized inspection or disclosure of returns and return information, 26 U.S.C. § 6103 and 7431.  (See id. at 2.)  On August 23, 2023, Defendants removed the action to the Eastern District of Pennsylvania.[2]  (Doc. No. 1.)

On October 13, 2023, Plaintiffs filed an Amended Complaint which is the operative Complaint in this matter, again alleging in two counts violations of (1) the Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 Pa. C.S. § 5701, et seq., and (2) 26 U.S.C. § 6103 and 7431.  (Doc. No. 16.)  In the Amended Complaint, Plaintiff LoVallo joined Plaintiff Caimano in the action, alleging that Defendants "intercepted, disclosed, disseminated, transmitted, and released confidential tax return information to Meta and Google."  (Id. at 7.)  Further, Defendants allegedly "violated federal law by sharing taxpayer return information with Meta and Google without valid taxpayer consent."  (Id. at 11.)

---

[2]  On September 29, 2023, Defendants filed a Motion to Compel Arbitration and Stay Proceedings. (Doc. No. 10.)  On August 30, 2023, Defendants filed a Motion to Bifurcate the Proceedings "so that the Parties may first brief and obtain a ruling on the Motion to Compel Arbitration under the Federal Arbitration Act, before Defendants assert and the parties brief Federal Rule of Civil Procedure 12(b) pleading arguments."  (Doc. No. 5.)  Following a telephone conference, the parties withdrew the Motion to Bifurcate and Defendants' Motion to Compel Arbitration. (Doc. No. 10.)  In addition, this Court set a briefing schedule on the Renewed Motion to Compel Arbitration.  (See Doc. No. 22.)

### D.     Defendants' Renewed Motion to Compel Arbitration and Plaintiffs' Response in Opposition

On December 20, 2023, Defendants filed the Renewed Motion to Compel Arbitration (Doc. No. 23), arguing that Plaintiff's claims are subject to a valid and enforceable arbitration provision under the Federal Arbitration Act ("FAA") and that this case should be stayed pending arbitration. (See Doc. No. 23 at 1.)  In particular, Defendants argue that (1) a valid and binding contract was formed between Plaintiffs and Defendants when agreeing to the Online Services Agreement, (2) Plaintiffs' claims fall within the scope of the Agreement, (3) the Agreement is not procedurally or substantively unconscionable, and (4) Plaintiff LoVallo cannot avoid arbitration by arguing that only his wife, Mrs. LoVallo, agreed to arbitration.  (See Doc. No 23-1 at 1-18.)

On January 19, 2024, Plaintiffs filed a Response in Opposition to Defendants' Motion. (Doc. No. 24.)  Plaintiffs first argue that they did not agree to arbitration.  (See id. at 6.)  Second, Plaintiffs assert that "Plaintiff LoVallo is not bound to arbitrate his claims because of his wife's use of H&R Block."  (See id. at 14.)  Third, Plaintiffs aver that "the Online Services Agreement is illusory" and "procedurally and substantively unconscionable."  (See id. at 30-45.)  Finally, Plaintiffs contend that "the Federal Arbitration Act does not require that this litigation be stayed." (See id. at 48.)

On February 5, 2024, Defendants filed a Reply to Plaintiff's Response in Opposition.  (Doc. No. 26.)  On February 23, 2024, Plaintiffs also filed a Notice of Supplemental Authority, bringing a Seventh Circuit case to the Court's attention: Coatney v. Ancestry.com DNA, LLC, 93 F.4th 1014 (7th Cir. 2024).[3]  (Doc. No. 27.)  Subsequently, Defendants filed a Response to Plaintiffs' Notice

---

[3] In Coatney, the Seventh Circuit Court of Appeals addressed a motion to compel arbitration of children plaintiffs whose guardians had created DNA testing accounts on their behalf.  93 F.4th at 1017.  In denying the motion to compel arbitration, the court held that the children plaintiffs were not bound by third-party beneficiary status, nor by an estoppel theory.  Thus, the Seventh Circuit upheld the district court's denial of compelled arbitration.  See id. at 1029-30.

of Supplemental Authority.  (Doc. No. 28.)

## III.   ANALYSIS

### A.   Standard of Review

Until recently, district courts in the Third Circuit were split regarding the proper standard for evaluating a motion to compel arbitration under the Federal Arbitration Act ("FAA").  Some courts applied a Rule 12(b)(6) motion to dismiss standard, while others applied a Rule 56 motion for summary judgment standard.  However, in Guidotti v. Legal Helpers Debt Resolution, 716 F.3d 764 (3d Cir. 2013), the Third Circuit Court of Appeals clarified the correct standard.

In Guidotti, the Third Circuit opined that the inconsistent application of the two standards stemmed from "the competing purposes of the FAA, and by the values underlying contract interpretation."  Id. at 773.  The Court noted that "the FAA places considerable emphasis on 'efficient and speedy dispute resolution,'" favoring the application of a Rule 12(b)(6) motion to dismiss standard and no discovery process.  Id. (quoting Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 221 (1985)).  To support the provisions and purposes of the FAA, the court noted that the standard of review for motions to compel arbitration should be tied to the strength of the complaint and its supporting documents.  The court therefore held that:

> [W]hen it is apparent, based on 'the face of a complaint, and documents relied upon in the complaint,' that certain of a party's claims 'are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay.' . . . But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then 'the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question.' . . . After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard.  In the event that summary judgment is not warranted

because 'the party opposing arbitration can demonstrate, by means of citations to the record,' that there is "a genuine dispute as to the enforceability of the arbitration clause," the 'court may then proceed summarily to a trial regarding "the making of the arbitration agreement or the failure, neglect, or refusal to perform the same," as Section 4 of the FAA envisions.'

Id. at 776 (quoting Somerset Consulting, LLC v. United Cap. Lenders, LLC, 832 F. Supp. 2d 474, 482 (E.D. Pa. 2011)); see also Sanford v. Bracewell & Guiliani, LLP, 618 F. App'x 114, 117 (3d Cir. 2015).

In sum, a district court will review a motion to compel arbitration under the Rule 12(b)(6) standard "if arbitrability is apparent on the face of the complaint and incorporated documents, and the opposing party fails to set forth reliable, additional evidence showing that it did not intend to be bound by the arbitration clause." Richards v. Am. Acad. Health Sys., LLC., No. 20-00059, 2020 WL 2615688, at *3 (E.D. Pa. May 22, 2020). "If, however, arbitrability is not apparent on the face of the complaint and its supporting documents, or the opposing party has come forth with reliable evidence that it did not intend to be bound by the clause, the Court will order discovery on the issue of arbitrability and then consider the renewed motion" under the Rule 56 standard. Id.

      1.     Arbitrability is Apparent on the Face of the Amended Complaint and Supporting Documents

Initially, the Court will decide whether to use the 12(b)(6) Motion to Dismiss standard when addressing the Motion to Compel Arbitration. The Court first looks to whether the arbitrability of Plaintiff's claims is apparent on the face of the Amended Complaint and supporting documents. In determining whether the arbitrability of Plaintiff's claims is apparent, district courts consider "the face of a complaint, and documents relied upon [there]in." Guidotti, 716 F.3d at 776 (citation and quotation marks omitted). Accordingly, an arbitration agreement need not be attached to the complaint in order to be "apparent." See Richards, 2020 WL 2615688, at *3 n.5 ("The contract containing the arbitration clause does not need to be attached to the operative complaint.").

13

"Rather, it simply needs to be relied upon or incorporated in the complaint." Id.[4]

Here, the arbitration provision was relied upon and incorporated in the Amended Complaint. No party disputes that the arbitration provision of the Online Services Agreement was referenced int the Amended Complaint. (See Doc. No. 16 at 4, 18, 24.)

Further, the Amended Complaint alleges Defendant

shar[ed] sensitive taxpayer data with Meta Platforms, Inc. ("Meta") and Google LLC and its affiliates ("Google"), without the taxpayers' knowing and voluntary consent. The confidential tax return information [Defendant] unlawfully intercepted, disclosed, disseminated, and transmitted to third-parties, including Meta and Google, included taxpayers' names; personal identifiers; health savings account contributions; college tuition grants, scholarships, and educational expenses; and the specific pages visited by the taxpayers, such as those relating to dependents, certain types of income, and certain tax credits and deductions.

(Id. at 2.) These allegations stem from Plaintiffs' use of Defendant's online platform for tax preparation and filing, actions which require an online user to agree to the Online Services Agreement and acknowledge the arbitration provision therein.

In addition, the arbitration provision was clearly stated in the check box agreement: "I agree to the terms and conditions of the Electronic Communications Consent and Online Services Agreement, which includes the requirement that any dispute be resolved through binding arbitration." (See id.; see also Doc. No 23-5.) Because the arbitration provision "appears in a contract relied upon in the [c]omplaint," arbitrability is apparent on the face of the Amended

---

[4] See also Lawson v. City of Philadelphia, No. 18-1912, 2019 WL 934976, at *2 (E.D. Pa. Feb. 25, 2019) (alterations in original) (quoting CardioNet, 751 F.3d at 168 n.2) ("An arbitration clause may be deemed 'apparent' even when a 'contract[], though not appended to the Complaint, [is] integral to, and referenced in, the Complaint.' . . . Accordingly, when 'the arbitration clause at issue appears in a contract relied upon in the Complaint, [the court] resolve[s] the motion to compel arbitration under a motion to dismiss standard[.]'"); Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) ("[Under] Rule 12(b)(6) . . . a court must consider only the complaint, exhibits attached to the complaint . . . as well as undisputedly authentic documents if the complainant's claims are based upon those documents.").

Complaint and supporting documents.  CardioNet, Inc. v. Cigna Health Corp., 751 F.3d 165, 168 n.2 (3d Cir. 2014) (resolving motion to compel under 12(b)(6) standard "[b]ecause the arbitration clause at issue appear[ed] in a contract relied upon in the Complaint").

2. Plaintiffs Have Not Presented Reliable Additional Evidence<br>Sufficient to Place the Agreement to Arbitrate in Issue

Next, the Court looks to whether Plaintiffs have set forth reliable, additional evidence sufficient to place the arbitration agreement in issue.  Under Guidotti, if an opposing party responds to a motion to compel arbitration with "additional facts sufficient to place the agreement to arbitrate in issue," "the Court will order discovery on the issue of arbitrability and then consider the renewed motion pursuant to the Rule 56 summary judgment standard."  Richards, 2020 WL 2615688, at *3 (citations omitted).  "Discovery is not warranted," however, "without reliable evidence that 'is more than a naked assertion . . . that [the party] did not intend to be bound by the arbitration clause.'"  Id. at *3 n.5 (quotation marks omitted) (quoting Guidotti, 716 F.3d at 774).

Here, Plaintiffs contend that they are not bound by Defendants' arbitration provision.  (See Doc. Nos. 16 at 4; 24 at 6, 14.)  Plaintiffs argue (1) that LoVallo and Caimano never agreed to arbitration because Defendants "fail[ed] to explicitly advise users that the act of clicking a checkbox will constitute assent to the Online Services Agreement," (2) LoVallo specifically is not bound to the arbitration provision because only his wife [Mrs. LoVallo] used Defendant's online tax website, and (3) Plaintiffs argue that the arbitration provision was illusory, unenforceable, and unconscionable.  (Doc. No. 24 at 6, 14, 30-47.)

As more fully discussed infra, Plaintiff's contentions are without merit and arbitration will be enforced.  However, it will be helpful to briefly summarize here why the points raised by Plaintiffs as additional facts are insufficient to place the arbitration provision at issue.  First, the Court has concluded that LoVallo and Caimano agreed to arbitration by clicking the check box

15

agreement.  Second, LoVallo is bound because his wife in preparing their joint tax returns on Defendants' online platform acted as his agent.  Third, the Online Services Agreement, including the Arbitration Provision, is not unconscionable.  It is a valid and enforceable arbitration agreement under Pennsylvania law.  Accordingly, Plaintiffs have failed to set forth reliable, additional evidence sufficient to place the Arbitration Provision in issue.

In sum, because arbitrability is apparent on the face of the Amended Complaint, and because Plaintiffs have not responded to the Motion with additional facts sufficient to place the Arbitration Policy in issue, the Court will review the Motion to Compel Arbitration under the Rule 12(b)(6) standard.  Under this standard, the Court accepts as true all factual allegations in the Amended Complaint and its supporting documents.  See Guidotti, 716 F.3d at 776; CardioNet, 751 F.3d at 168 n.2 (in applying the Rule 12(b)(6) standard to a motion to compel arbitration, the court "accept[s] as true the factual allegations set forth in the Complaint" and may "consider the substance of the contracts that ostensibly compel arbitration.").

### B. Arbitration Provision in the Online Services Agreement Formed a Valid and Binding Contract

Plaintiffs oppose arbitration.  In support of this position, they first argue that neither Lovallo nor Caimano agreed to arbitration because Defendant did not "secure[] mutual assent from its users" when using what Plaintiff terms a "browse-wrap agreement," where the acknowledgement includes a link to the full Agreement.  (Doc. No. 24 at 17.)  Second, Plaintiffs argue that LoVallo is not bound to go to arbitration because only Michelle LoVallo, not Plaintiff Frank LoVallo, used Defendants' web platform to prepare and file joint tax returns.  (See id. at 23.)  In particular, Plaintiffs argue that arbitration cannot be compelled based on (1) equitable estoppel, (2) third-party beneficiary status, or (3) any agency relationship between Mr. and Mrs LoVallo.  (See id. at 14-25.)  Finally, Plaintiffs argue they are not subject to arbitration because the Online

Services Agreement itself is illusory, unenforceable, and substantively and procedurally unconscionable.  (See id. at 30-38.)

In their Reply, Defendants submit that the "arbitration agreement's terms are fully enforceable under the Federal Arbitration Act ("FAA") and Pennsylvania law."  (Doc. No. 26 at 1.)  Specifically, Defendants note that a binding agreement was formed when Plaintiffs attested that they "agree to the terms and conditions of the Electronic Communications Consent and the Online Services Agreement, which includes the requirement that any dispute be resolved through binding arbitration."  (Id. at 2.)  Second, Defendant submits that the Online Services Agreement is neither illusory nor substantively or procedurally unconscionable.  (See id.)  Finally, Defendants assert that Plaintiff Frank LoVallo may not avoid arbitration because he claims that his wife was the only party to use the online tax platform and acknowledge the arbitration agreement.  (See id. at 8.)  Defendants argue that principles of agency law, equitable estoppel, and third-party beneficiary law support the enforcement of the arbitration provision against Plaintiff LoVallo.  (See id. at 8-10.)

To determine whether a party may be compelled to arbitrate under the FAA, the Court "first consider[s] (1) whether there is a valid agreement to arbitrate between the parties and, if so, (2) whether the merits-based dispute in question falls within the scope of that valid agreement."  Flintkote Co. v. Aviva PLC, 769 F.3d 215, 220 (3d Cir. 2014)).  "When determining both the existence and the scope of an arbitration agreement, there is a presumption in favor of arbitrability."  Trippe Mfg. v. Niles Audio Corp., 401 F.3d 529, 532 (3d Cir. 2005).

1.    Defendants' Acknowledgment Process Formed a Valid and Binding Agreement to Arbitrate

Here, a valid agreement exists between the parties that includes an arbitration provision. "As agreements to arbitrate are matters of contract, a valid arbitration agreement requires mutual

17

assent." <u>Dobbs v. Health IQ Ins. Servs., Inc.</u>, No. CV 21-5276, 2022 WL 2974713, at *3 (E.D. Pa. July 27, 2022). When addressing online consumer transactions, "the occurrence of mutual assent ordinarily turns on whether the consumer had reasonable notice of the merchant's terms of service agreement." <u>Id.</u> (citing <u>Nguyen v. Barnes & Noble Inc.</u>, 763 F.3d 1171, 1177 (9th Cir. 2014)). Further,

> [n]otice of an online merchant's terms [may] occur[] through 'clickwrap' agreements, which require website users to click on an 'I agree' box after being presented with a list of terms and conditions of use . . .

<u>Id.</u> Such clickwrap agreements[5] are also assessed using "traditional principles of contract law and focus on whether the plaintiff had reasonable notice of and manifested assent to the clickwrap

---

[5] Plaintiffs contend that Defendants' Online Services Agreement constitutes a "browsewrap" agreement, not a clickwrap agreement. (<u>See</u> Doc. No. 24 at 2.) Plaintiffs note that "[w]hile a 'clickwrap' agreement requires users to affirmatively click a button signifying their agreement to terms of use after viewing the agreement, a 'browsewrap' agreement purports to obtain the same assent automatically, simply by use of their website." (<u>Id.</u>) In <u>Nguyen v. Barnes & Noble Inc.</u>, the Ninth Circuit Court of Appeals discussed the difference between clickwrap and browsewrap agreements.

> Unlike a clickwrap agreement, a browsewrap agreement does not require the user to manifest assent to the terms and conditions expressly . . . [a] party instead gives his assent simply by using the website. <u>Hines v. Overstock.com, Inc.</u>, 668 F. Supp.2d 362, 366-67 (E.D.N.Y. 2009). Indeed, 'in a pure—form browsewrap agreement, 'the website will contain a notice that—merely by using the services of, obtaining information from, or initiating applications within the website—the user is agreeing to and is bound by the site's terms of service.' <u>Fteja v. Facebook, Inc.</u>, 841 F. Supp.2d 829, 837 (S.D.N.Y. 2012) (quoting <u>United States v. Drew</u>, 259 F.R.D. 449, 462, n. 22 (C.D.Cal. 2009)) . . . 'The defining feature of browsewrap agreements is that the user can continue to use the website or its services without visiting the page hosting the browsewrap agreement or even knowing that such a webpage exists.'" <u>Be In, Inc. v. Google Inc.</u>, No. 12–CV–03373–LHK, 2013 WL 5568706, at *6 (N.D.Cal. Oct. 9, 2013).

763 F.3d 1171, 1176 (9th Cir. 2014). Here, Defendants' "check box" acknowledgement box required affirmative steps by the user to manifest assent to the terms and conditions. As such, this form of assent is not one where the mere act of using Defendants' online platform creates an agreement between the parties. Instead, the user was required to affirmatively click the "check box" to acknowledge that "I agree to the terms and conditions of the Electronic Communications

agreement." Id. at *4 (quoting Coulter v. Experian Info. Sols., Inc., No. CV 20-1814, 2021 WL 735726, at *5 (E.D. Pa. Feb. 25, 2021)). And courts have held that clickwrap agreements manifest assent to the agreement. See Zabokritsky v. JetSmarter, Inc., No. CV 19-273, 2019 WL 2563738, at *3, n. 30 (E.D. Pa. June 20, 2019).

Here, Plaintiffs received notice of the hyperlinked Online Services Agreement and manifested assent by clicking the "check box" button, and then clicking "Next." (See Docs. No. 23-5, 23-6.) As noted by Defendants, Plaintiffs were required to "click a check box button in [Defendants'] online . . . filing system right next to an acknowledgment that they were agreeing to 'the Online Services Agreement, which includes the requirement that any dispute be resolved through binding arbitration'—with the phrase 'Online Services Agreement' as a green underlined hyperlink that linked to the full terms." (Doc No. 23-1 at 7.) The terms of the Online Services Agreement were also highlighted by a hyperlink which was clearly and conspicuously set off from the remaining black text in a green, underlined font. (See Doc. No. 23-5, 23-6.) By setting off the text in a distinct color, the website provided notice of the terms of the Online Services Agreement. See Margulis v. HomeAdvisor, Inc., 2020 WL 4673783, at *5 (E.D. Mo. August 12, 2020) (holding notice was given of Terms and Conditions when set off from the remaining text in a hyperlink with blue font).

In her declaration, Plaintiff Caimano contends that she did not knowingly assent to arbitration because she does not recall being presented with the terms and conditions. (See Doc. No. 18-2 at ¶¶ 7-8.) However, "whether the user actually reads the terms to which he assents is

---

Consent and Online Services Agreement, which includes the requirement that any dispute be resolved through binding arbitration." (See Doc. No 23-5.) For this reason, Defendants' online form of assent was done through a clickwrap agreement, not a browse wrap agreement.

immaterial." <u>Liptak v. Accelerated Inventory Mgmt., LLC</u>, No. 2:20-CV-967, 2021 WL 650514, at *2 (W.D. Pa. Feb. 19, 2021) (quoting <u>Zabokritsky</u>, 2019 WL 2563738, at *3).  Plaintiffs had reasonable notice of the terms of the Online Services Agreement, and they assented to the Online Services Agreement by clicking the "check box" acknowledgment and proceeding through the online tax preparation platform.  <u>See</u> <u>Dobbs</u>, 2022 WL 2974713, at *4 (holding that the user mutually assented to the hyperlinked terms of use when the hyperlinked text was set off "purposely and conspicuously . . . from the remaining text . . .").  Therefore, a valid contract was formed between Plaintiffs and Defendants.

        2.      The Arbitration Provision in the Online Services Agreement is Not Unconscionable

        As previously noted, the parties do not dispute that Pennsylvania law governs the instant agreement.  However, Plaintiffs argue that the Arbitration Provision in the Online Services Agreement is unenforceable because it is both procedurally and substantively unconscionable. (<u>See</u> Doc. No. 24 at 32-45.)

        Under Pennsylvania law, a plaintiff must show both procedural and substantive unconscionability to avoid enforcement of an arbitration provision.  <u>See</u> <u>Hopkins v. New Day Fin.</u>, 643 F. Supp. 2d 704, 716 (E.D. Pa. 2009); <u>Harris v. Green Tree Fin. Corp.</u>, 183 F.3d 173, 181 (3d Cir. 1999).  Procedural unconscionability refers to the process by which an agreement is entered into.  <u>See</u> <u>Zimmer v. CooperNeff Advisors, Inc.</u>, 523 F.3d 224, 228 (3d Cir. 2008).  Substantive unconscionability asks whether the provision unreasonably favors the party asserting it.  <u>See</u> <u>Quilloin v. Tenet HealthSystem Philadelphia, Inc.</u>, 673 F.3d 221, 230 (3d Cir. 2012).

        Here, Plaintiff contends that the Arbitration Provision is procedurally unconscionable because it results from an "unfair surprise" and is a contract of adhesion on a "take it or leave it" basis. (Doc. No. 24 at 34-35.)  Plaintiff also argues that it is substantively unconscionable because it

"lacks mutuality" and "unreasonably favors [Defendants] as it is designed to prevent users from filing arbitration claims." (Id. at 36.)

    a.    The Arbitration Provision is not Procedurally Unconscionable

"The Pennsylvania Supreme Court has defined procedural unconscionability as the 'absence of meaningful choice on the part of one of the parties.'" Hopkins, 643 F. Supp. 2d at 717 (quoting Witmer v. Exxon Corp., 434 A.2d 1222, 1228 (Pa. 1981)). "Procedural unconscionability is generally found where there is a contract of adhesion—a contract prepared by a party with excessive bargaining power and presented to the other party on a 'take it or leave it' basis." Id. (citing Denlinger, Inc. v. Dendler, 608 A.2d 1061, 1068 (Pa. 1992)). However, a disparity in bargaining power alone does not necessarily rise to the level of procedural unconscionability. See Quillon, 673 F.3d at 235; see also Denlinger, 608 A.2d at 1067 (quotation marks omitted) (quoting Witmer, 434 A.2d at 1228) (stating that Pennsylvania Supreme Court and federal courts have "refused to hold contracts unconscionable simply because of a disparity in bargaining power."). "The general test is whether the party challenging the agreement had any meaningful choice regarding the acceptance of its provisions." Hopkins, 643 F. Supp. 2d at 717.

In this case, Plaintiffs first argue that the Arbitration Provision of the Online Services Agreement is procedurally unconscionable because "it results from an 'unfair surprise'" where the parties did not "mutually assent to the same thing." (Doc. No. 24 at 34.) Plaintiffs note that:

> [Defendants'] registration page includes a statement that there is a 'requirement that any dispute be resolved through binding arbitration.' It did not however warn users that the Online Services Agreement includes a 'mass arbitration' provision that makes the promise that users could obtain relief through arbitration illusory.

(Id.) For these reasons, Plaintiffs assert that this Arbitration Provision is fundamentally unfair. (See id. at 34, n. 17.) Second, Plaintiffs contend that the Arbitration Provision is a contract of adhesion provided on a "take it or leave it basis" that did not provide them with a "meaningful

decision about whether to agree to the terms of the Online Services Agreement by allowing them to decline acceptance during the registration process." (Id. at 35.)

In response, Defendants submit that the online process of clicking the "check box" was not a procedurally unconscionable agreement. (Doc. No. 23-1 at 9.) "Where, as here, a party is on notice of a hyperlinked agreement and expresses her assent by clicking to acknowledge that agreement, a valid agreement is formed." (Id.) Further, Defendant notes that it "provid[ed] reasonably conspicuous notice of the terms" because "the login screen specifically flagged that the client 'agree[s] to the terms and conditions of the Electronic Communications Consent and the Online Services Agreement, which includes the requirement that any dispute be resolved through binding arbitration." (Id. at 10.)

Here, Defendants have the better position. First, Plaintiffs were not on the receiving end of an "unfair surprise" as a result of their acknowledgment of the Online Services Agreement. Plaintiffs chose to use Defendants' online services for tax preparation, and when prompted, clicked the "check box" when asked whether they consented to any dispute being resolved through binding arbitration. The hyperlink in blue, underlined text provided the full text of the Arbitration Provision in the Online Services Agreement. Further, the first page of the Online Services Agreement states in bold, capital letters that: **"THIS AGREEMENT INCLUDES A MUTUAL BINDING ARBITRATION AGREEMENT IN SECTION 11 THAT REQUIRES RESOLUTION OF DISPUTES BY INDIVIDUAL ARBITRATION UNLESS YOU OPT-OUT AS PROVIDED IN SECTION 11."** (Doc. No. 23-3 at 1.) In addition, Plaintiffs were not subject to an "unfair surprise" concerning what they refer to as a "mass arbitration provision" that states that:

> If this section 11.6 applies to a Notice, the statute of limitations applicable to the claims and relief set forth in that Notice shall be tolled from the beginning date of

the Informal Resolution Period until that Notice is selected for a bellwether proceeding, withdrawn, or otherwise resolved.

In this regard, just as they did for the entirety of the Online Services Agreement, Plaintiffs had reasonable notice of this provision concerning the statute of limitations and the tolling of claims, and as Defendants note, "no consumer [is] at risk of losing [any] claims" as a result of this provision.  (Doc. No. 23-1 at 18.)

Furthermore, Plaintiffs were not presented with the Arbitration Provision in the Online Services Agreement on a "take it or leave it basis."[6]  Plaintiffs had a meaningful choice when acknowledging and accepting the Online Services Agreement, which included the opportunity to opt out of arbitration within thirty (30) days of acceptance.  The Online Services Agreement contained the "Opt Out" Provision, included in the Online Services Agreement in bold, outlined text:

> **Arbitration Opt Out:** You may opt out of this Arbitration Agreement within 30 days after you accept this Agreement by filling out the form at www.hrblock.com/goto/optout, or by sending a signed letter to Arbitration Opt Out, P.O. Box 32818, Kansas City, MO 64171. The letter should include your printed name, address, the first five digits of your Social Security Number, and the words

---

[6] On this point of a "take it or leave it" agreement, Plaintiffs argue that Defendants' Online Services Agreement was illusory because included in the Agreement was Defendants' "sole discretion to change the terms of this Agreement." (Doc. No. 24 at 30-31.) Plaintiffs assert that because Defendants could change the terms of the Agreement, such a contract is illusory and not enforceable. (See id.) However, as discussed above, Plaintiffs had a meaningful choice when accepting the terms of the Online Services Agreement, and they could even opt out within thirty (30) days if they so decided by completing an online form or sending in a letter. Plaintiffs did not do so.

To the contrary, Defendants argue that the Agreement is not illusory because it is supported by consideration. (See Doc. No. 26 at 2.) Defendants assert that the Agreement is supported by consideration because H&R Block was required to provide notice of any changes and Plaintiffs had a meaningful right to opt out of arbitration. (See id. at 2-3) (citing Blair v. Scott Specialty Gases, 283 F.3d 595, 604-05 (3d Cir. 2002).) As the Third Circuit Court of Appeals held in Singh v. Uber Techs., Inc., "a meaningful right to opt out of every agreement" is sufficient to demonstrate that an agreement is not illusory. 67 F.4th 550, 563-64 (3d Cir. 2023).

"Reject Arbitration." If you opt out of this Arbitration Agreement, any prior arbitration agreement shall remain in force and effect.

(Doc. No. 23-7 at 16.)  Any user who wanted to opt out of arbitration could have filled out the online form or sent a letter to Defendants.  Under these circumstances, there was no disparity of bargaining power.  The Online Services Agreement clearly and explicitly provided a simple step to opt out of arbitration.  And courts in this District generally find that arbitration agreements are not procedurally unconscionable "where an opt-out provision gave the plaintiff the ability to reject the agreement without repercussion."  See, e.g., Stephenson v. AT&T Servs., Inc., 2021 WL 3603322, at * 7 n.10 (E.D. Pa. Aug. 13, 2021); see also Clerk v. ACE Cash Exp., Inc., 2010 WL 364450, at *9 (E.D. Pa. Jan. 29, 2010); Fluke v. Cashcall, Inc., 2009 WL 1437593, at *8 (E.D. Pa. May 21, 2009).

As noted above, Plaintiffs must establish both procedural and substantive unconscionability to void the Arbitration Provision of the Online Services Agreement.  Because Plaintiffs cannot establish that the Agreement was procedurally unconscionable, the Court need not address substantive unconscionability.  Accordingly, the Arbitration Provision is valid and enforceable.

**C.  Plaintiff Frank LoVallo is Subject to Arbitration Based on Agency Principles**

The FAA "expresse[s] a strong federal policy in favor of resolving disputes through arbitration."  Richards, 2020 WL 2615688, at *4 (quoting Century Indem. Co. v. Certain Underwriters at Lloyd's London, 584 F.3d 513, 522 (3d Cir. 2009)).  Accordingly, "[a] court may compel arbitration even as to non-signatories of the arbitration agreement [or provision] under applicable state law doctrines[7] of 'assumption, piercing the corporate veil, alter ego, incorporation

---

[7] As noted, Pennsylvania law applies.  (See Doc. No. 24 at 12.)

by reference, third party beneficiary theories, waiver and estoppel.'" Id. (quoting Noye v. Johnson & Johnson Servs., Inc., 765 F. App'x 742, 745-48 (3d Cir. 2019)); see also Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 631 (2009) ("It is well settled that a contract may be 'enforced by or against' nonsignatories under 'traditional principles' of state law.'"). Moreover, a court may also compel arbitration using state law principles of agency. See Array Healthcare Facilities Sols. Inc. v. Pesce, No. 4098 JAN.TERM 2006, 2006 WL 5649856, at 556 (Pa. Com. Pl. Nov. 9, 2006) (quoting Bouriez v. Carnegie Mellon Univ., 359 F.3d 292, 294 (3d Cir. 2004)).

In the Motion to Compel Arbitration, Defendants seek to compel Plaintiff Frank LoVallo to arbitrate his claims based on state law doctrines such as agency, equitable estoppel,[8] or third-party beneficiary principles.[9] Regarding the agency doctrine, Defendants argue that Plaintiff Frank

---

[8] Equitable estoppel "bind[s] a non-signatory to an arbitration clause when that non-signatory has reaped the benefits of a contract containing an arbitration clause." Invista S.A.R.L. v. Rhodia, S.A., 625 F.3d 75, 84 (3d Cir. 2010) (citation omitted). "Courts have held non-signatories to an arbitration clause when the non-signatory knowingly exploits the agreement containing the arbitration clause despite having never signed the agreement." Griswold v. Coventry First LLC, 762 F.3d 264, 272 (3d Cir. 2014). However, as noted by the Third Circuit Court of Appeals, equitable estoppel is an exception that is narrowly applied, and Defendants' have not proffered any evidence that Plaintiff Frank LoVallo "knowingly exploited" the Online Services Agreement. See Griswold v. Coventry First LLC, 762 F.3d 264, 274 (3d Cir. 2014). Thus, the Court agrees with Plaintiffs that this theory is inapplicable in the instant case.

[9] To determine third-party beneficiary status, courts use a two-part test: (1) the court must determine if recognizing the party as a third-party beneficiary is "appropriate to effectuate the intention of the parties," and (2) "the circumstance must indicate that the promisee intends to give the third-party beneficiary the benefit of the promised performance.'" Weber v. Weber, 168 A.3d 266, 270-31 (Pa. Super. Ct. 2017). "[A] third-party beneficiary may enforce an arbitration provision in a contract providing it with benefits and is bound to comply with such a provision when it properly has been invoked." Hawthorne v. Fundamental Long Term Care Holdings, LLC, 2013 WL 5273218, at *3 (W.D. Pa. Sept. 19, 2013) (citing Johnson v. Pennsylvania Nat'l Ins. Cos., 594 A.2d 296, 298-99 (Pa. 1991). Here, Plaintiff Frank LoVallo is not a third-party beneficiary of the Online Services Agreement, as the subsection concerning Third-Party Beneficiaries in the Agreement explicitly states: "All rights and benefits of this Agreement from H&R Block are intended solely for the original purchaser of the Products and Services." (Doc. No. 23-7.) Thus, the Court agrees with Plaintiffs that LoVallo is not a third-party beneficiary.

LoVallo is the husband of Michelle LoVallo, who used Defendants' online tax preparation services. Defendants therefore assert that Mrs. LoVallo acted as her husband's agent when completing and submitting their joint tax documents online.  (See Doc. No. 23 at 19.)  In doing so, Mrs. LoVallo possessed apparent authority to enter into the Agreement on behalf of Mr. LoVallo as his wife, and she had this authority over the years that they filed their joint tax returns using Defendants' online services.  (See id. at 19-21.)

Plaintiffs argue to the contrary that Frank LoVallo is not subject to arbitration because "[n]o agency relationship exists between Frank LoVallo and his wife sufficient to bind him to arbitration."  (Doc. No 24 at 25.)  To support this argument, Plaintiffs contend first that Frank LoVallo did not give his wife any authority beyond the "specific and limited authority to prepare and file his tax returns."  (Id. at 27.)  Next, Plaintiffs argue that Mrs. LoVallo lacked apparent authority because "Defendant cites no evidence that Plaintiff Frank LoVallo had any interaction directly with Defendant, let alone that he caused it by his words or deed to believe that Mrs. LoVallo was his agent and authorized to enter into the Online Services Agreement and its arbitration and class action waiver provisions on his behalf."  (Id. at 28.)  In sum, Plaintiffs argue that Defendant "presumes the existence of an agency relationship" and "offers no evidence in support of its argument."  (Id. at 29.)

 "[A] party 'can be compelled to arbitrate under an agreement, even if he or she did not sign that agreement, if common-law principles of agency and contract support such an obligation on his or her part.'"  Array Healthcare Facilities Sols. Inc., 2006 WL 5649856, at 556 (quoting Bouriez, 359 F.3d at 294).  "Agency is a relationship whereby the principal manifests assent that another person (the agent) will act on the principal's behalf subject to the principal's control, and the agent agrees to do so."  Wisler v. Manor Care of Lancaster PA, LLC, 124 A.3d

317, 323 (2015) (citing <u>Basile v. H & R Block, Inc.</u>, 761 A.2d 1115, 1120 (Pa. 2000)).  "An agency relationship may be created by any of the following: (1) express authority, (2) implied authority, (3) apparent authority, and/or (4) authority by estoppel." <u>Walton v. Johnson</u>, 66 A.3d 782, 786 (Pa. Super. 2013).  "Agency cannot be inferred from mere relationships or family ties, and we do not assume agency merely because one person acts on behalf of another." <u>Wisler</u>, 124 A.3d at 343 (quoting <u>Sidle v. Kaufman</u>, 29 A.2d 77, 81 (Pa. 1942)).  "Rather, we look to facts to determine whether the principal expressly or impliedly intended to create an agency relationship." <u>Id.</u> "To that end, family ties may be relevant when considered with other factors evincing agency." <u>Id.</u> (citing <u>Sidle</u>, 29 A.2d at 81).  "Finally, the party asserting the agency relationship bears the burden of proving it by a preponderance of the evidence. <u>Id.</u> (citing <u>Walton</u>, 66 A.3d at 786).

The question presented then is whether Mrs. LoVallo had apparent authority to assent to the Online Services Agreement including the Arbitration Provision on behalf of her husband. "Apparent [authority] exists where the principal, by word or conduct, causes people with whom the alleged agent deals to believe that the principal has granted the agent authority to act." <u>Id.</u> at 324 (quoting <u>Walton</u>, 66 A.3d at 786).  Additionally, "[a]n agent cannot simply by his own words, invest himself with apparent authority. Such authority emanates from the action of the principal and not the agent." <u>Id.</u> (quoting <u>Walton</u>, 66 A.3d at 787).

As implied <u>supra</u>, family connections may inform the analysis of whether an agency relationship has been created imbuing apparent authority. <u>See</u> <u>Wisler</u>, 124 A.3d at 343.  Courts in Pennsylvania adopt the Restatement's view that "[a] husband or wife can be authorized to act for the other party to the marital relation," and that "circumstances which in the case of strangers would not indicate the creation of authority or apparent authority may indicate it in the case of

husband or wife."   Restatement (Second) of Agency § 22 & cmt. b (1958); <u>see also</u> <u>Sidle v.</u>
<u>Kaufman</u>, 29 A.2d 77 (citing with approval an identical provision in the First Restatement).

Apparent authority may be implied by a spouse's "custom or habit" in carrying out tasks
or acting for the other spouse.   <u>Washburn v. Northern Healthcare Facilities, Inc.</u>, 121 A.3d 1008,
1013 (Pa. Super. Ct. 2015).  For example, in <u>Soni v. Commissioner</u>, the Second Circuit Court of
Appeals found that an agency relationship existed when one spouse filed a tax return on behalf of
the other spouse with consent and intent that the spouse would handle all matters related to the tax
return.   76 F.4th 49, 60-61 (2d Cir. 2023).   The court noted that the agency relationship
encompassed "all matters pertaining to the [tax] [r]eturn."   <u>Id.</u> at 61.

Here, an agency relationship existed between Plaintiff Frank LoVallo and his wife,
Michelle LoVallo.   First, in the Amended Complaint, Plaintiff Frank LoVallo notes that his wife
"prepare[d] and file[d] joint tax returns" on the couple's behalf for three consecutive years.  (Doc.
No. 16 at 15.)  This "custom or habit" of Mrs. LoVallo of using Defendants' online services to
prepare and file the joint tax return on behalf of both Mr. and Mrs. LoVallo supports a finding that
Mrs. LoVallo was authorized to act as her husband's agent.   Further, by providing Mrs. LoVallo
with his social security and tax identification number, Mr. LoVallo by this conduct caused
Defendants to believe that the Mr. LoVallo granted Mrs. LoVallo the authority to assent on his
behalf to the Online Services Agreement's terms and conditions.   (<u>See</u> Doc. No. 23-3 at 6.) In
addition, when filing joint tax returns, the Internal Revenue Service ("IRS") requires both spouses
to enter a five-digit number to digitally sign the joint tax return.   And "[u]nder section
6061 and section 1.6013–1(a)(2), Income Tax Regs., a joint tax return must be signed by both
spouses unless one spouse signs as agent of the other."  <u>Strong v. Comm'r</u>, 81 T.C.M. (CCH) 1557,
at *11 (T.C. 2001).   Thus, the apparent authority granted to Mrs. LoVallo to prepare and file the

joint tax return encompassed all matters pertaining to the tax return, including entering into the Online Services Agreement with the arbitration agreement and to proceed with the use of the online tax platform.  Accordingly, Defendants may enforce the Arbitration Provision as to Plaintiffs under the doctrine of apparent agency.

### D.    Plaintiffs' Claims Fall within the Scope of the Arbitration Provision

As the Arbitration Provision in the Online Services Agreement is valid and enforceable under Pennsylvania law, the last inquiry to resolve is whether Plaintiffs' claims fall within the scope of that provision.  See Trippe Mfg., 401 F.3d at 532.  They do.  And because the Arbitration Provision covers all claims asserted in the Amended Complaint, the Court must compel arbitration.

The Arbitration Provision in the Online Services Agreement provides as follows:

> **Scope of Arbitration Agreement**. You and the H&R Block Parties agree that all disputes and claims between you and the H&R Block Parties shall be resolved through binding individual arbitration unless you opt out of this Arbitration Agreement using the process explained below. However, to the fullest extent permitted by applicable law, either you or the H&R Block Parties may elect that an individual claim be decided in small claims court, as long as it is brought and maintained as an individualized claim and is not removed or appealed to a court of general jurisdiction. All issues are for the arbitrator to decide, except that issues relating to the arbitrability of disputes and the validity, enforceability, and scope of this Arbitration Agreement, including the interpretation of and compliance with sections 11.2, 11.4, and 11.6 below, shall be decided by a court and not an arbitrator. The terms "H&R Block Parties" or "we" or "us" in this Arbitration Agreement include HRB Digital LLC, HRB Tax Group, Inc., and Emerald Financial Services, LLC, along with their predecessors, successors, and assigns, and each of the past, present, and future direct or indirect parents, subsidiaries, affiliates, officers, directors, agents, employees, and franchisees of any of them.

(Doc. No. 23-7 at 15.)

Despite the broad coverage in the Online Services Agreement, which includes "all disputes and claims between you and the H+R Block Parties," Plaintiff contends that the action should not be stayed pending arbitration because Frank LoVallo was not a signatory to the Agreement, and

therefore the FAA does not govern the instant dispute.  (See Doc. No. 24 at 48-49.)  This argument is without merit for the reasons stated above.  In any event, Defendants submit that "the arbitration agreement covers the claims Plaintiffs assert in this lawsuit."  (Doc. No. 23-1 at 12.)

"When determining whether a given claim falls within the scope of an arbitration agreement, a court must 'focus on the factual allegations in the complaint rather than the legal causes of action asserted.'"  Varallo v. Elkins Park Hosp., 63 F. App'x 601, 603 (3d Cir. 2003) (citation omitted).  "If these factual allegations 'touch matters' covered by the parties' contract, then those claims must be arbitrated, whatever the legal labels attached to them."  Id. (citation omitted).  Moreover, "[a]s a matter of federal law, any doubts concerning the scope of arbitration should be resolved in favor of arbitration."  Moses H. Cone Memorial Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24-25 (1983).

Here, the Arbitration Provision covers all Plaintiffs' claims asserted in the instant suit. Plaintiffs' claims alleging violations of (1) the Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 Pa. C.S. § 5701, et seq., and (2) 26 U.S.C. § 6103 and 7431, which prohibit disclosure of confidential tax return information, "relate to or arise out of" Plaintiff's use of Defendants' online platform for preparation and filing of tax returns.  Therefore, the factual allegations concerning the disclosure of Plaintiffs' private information in the Amended Complaint "touch matters" covered by the contract between the parties, and those claims must be arbitrated. See Varallo, 63 F. App'x at 603.  And as the United States Supreme Court has held, such matters should be resolved in favor of arbitration.  See Moses H. Cone Memorial Hosp., 460 U.S. at 24-25.

For all the above reasons, Plaintiffs' claims against Defendants in the Amended Complaint are subject to the valid and enforceable Arbitration Provision in the Online Services Agreement, and the Court will compel arbitration of Plaintiffs' claims.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Second Motion to Compel Arbitration and Stay Proceedings (Doc. No. 23) will be granted.  This case will be stayed pending the outcome of arbitration.  An appropriate Order follows.