IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RONI SUE CAIMANO, on behalf of herself and all others similarly situated, and | : : : : | Civil Action No. 23-cv-3272 |
| FRANK LOVALLO, on behalf of himself and all others similarly situated, | : : : : : | Jury Trial Demanded |
| Plaintiffs, | : : | |
| v. | : : | |
| HRB DIGITAL LLC. and HRB TAX GROUP, INC., | : : : | |
| Defendants. | : : | |

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF LOVALLO'S MOTION TO VACATE THE JULY 3, 2024 ORDER AND TO LIFT THE STAY AS IT PERTAINS TO HIM BECAUSE OF A CHANGE IN PENNSYLVANIA LAW**

---

COHEN, PLACITELLA & ROTH, P.C.
James P. Goslee (#203043)
Michael Coren (#31037)
Eric S. Pasternack (#320127)
Jared M. Placitella (#321333)
2001 Market St., Suite 2900
Philadelphia, PA 19103
(215) 567-3500
jgoslee@cprlaw.com
mcoren@cprlaw.com
epasternack@cprlaw.com
jmplacitella@cprlaw.com

## <u>TABLE OF CONTENTS</u>

I.   Introduction and Background ............................................................ 1

II.  Pertinent Developments in Pennsylvania Caselaw. ....................... 4

    A.   *Santiago v. Philly Trampoline Park* (Pa. 2025) ....................... 4

    B.   *Kirkham v. TaxAct Inc.* (3d Cir. 2025) .................................... 9

III. Procedural basis for Vacating the July 3, 2024 Order and Lifting the Stay. ................................................................................................ 10

IV.  Argument ........................................................................................ 11

    A.   H&R Block's arbitration agreement may not be extended by implication. ............................................................................... 12

    B.   There is no evidence that Mr. LoVallo "deliberately and specifically" authorized his wife to use H&R Block. ............. 14

    C.   No facts have been presented that Mr. LoVallo, by words or conduct, led H&R Block to reasonably believe that he had granted his wife the authority to enter into the Online Services Agreement on his behalf. ........................................ 18

V.   Conclusion ..................................................................................... 22

# TABLE OF AUTHORITIES

## Cases

*Emmaus Mun. Auth. v. Eltz,*
   204 A.2d 926 (Pa. 1964) ......................................................................... 12

*Jacob v. Weisser,*
   56 A. 1065 (Pa. 1904) ............................................................................. 12

*Kirkham v. TaxAct, Inc.,*
   No. 23-3303,
   2024 U.S. Dist. LEXIS 45814 (E.D. Pa. Mar. 15, 2024) ...................... 10

*Kirkham v. TaxAct, Inc.,*
   No. 24-1515,
   2025 U.S. App. LEXIS 6975 (3d Cir. March 26, 2025) ......................... 3

*Mcllwain v. Saber Healthcare Grp., Inc.,*
   208 A.3d 478 (Pa. Super. 2019) ..................................................... 19, 21

*N. River Ins. Co. v. Cigna Reins. Co.,*
   52 F.3d 1194 (3d Cir. 1995)..................................................................... 11

*O'Hanlon v. Uber Tech., Inc.,*
   990 F.3d 757 (3d Cir. 2021).................................................................... 11

*Santiago v. Philly Trampoline Park, LLC,*
   Nos. 24 EAP 223 and 25 EAP 223,
   2025 Pa. LEXIS 1501 (Pa. 2025) ................................................. passim

*Schreiber v. Olan Mills,*
   627 A.2d 806 (Pa. 1993) ......................................................................... 14

*Sidle v. Kaufman,*
   29 A.2d 77 (Pa. 1942) ............................................................................... 7

*Smay v. E.R. Stuebner, Inc.*,
  864 A.2d 1266 (Pa. Super. Ct. 2004) ..................................................... 11

*Soni v. Commissioner*,
  76 F.4th 49 (2d Cir. 2023) ...................................................... 16

*V.I. Water & Power v. GE Int'l*,
  561 F. App'x 131 (3d Cir. 2014) ............................................. 10

*Washburn v. N. Health Facilities, Inc.*,
  121 A.3d 1008 (Pa. Super. 2015) .................................................. passim

*Wisler v. Manor Care of Lancaster PA, LLC*,
  124 A.3d 317 (Pa. Super. 2015) ............................................. 21

## Rules

Fed. R. Civ. P. 54(b)....................................................................... 10

## I.    Introduction and Background

This Court granted the motion of H&R Block, HRB Digital LLC, and HRB Tax Group, Inc. (collectively, "H&R Block") to compel Plaintiff Frank LoVallo to arbitration and to stay this litigation, finding that his wife had apparent authority to bind him to H&R Block's Online Services Agreement. Dkt. 30. Since then, the Pennsylvania Supreme Court has issued a decision—*Santiago v. Philly Trampoline Park, LLC*, Nos. 24 EAP 223 and 25 EAP 223, 2025 Pa. LEXIS 1501 (Pa. 2025)— that underscores the difficult burden defendants face in seeking to enforce arbitration agreements against non-signatory spouses, like Mr. LoVallo, and which, H&R Block cannot overcome.

In clarifying Pennsylvania law on the issues of implied and apparent authority, the Supreme Court stressed that "arbitration agreements are strictly construed and may not be extended by implication, either as to the persons subject thereto or the claims to be arbitrated." *Id.* at *16. It also clarified that for authority to be implied to the signatory spouse, the non-signatory spouse must have "deliberately and specifically" authorized the other to act on his or her behalf. And finally, the Supreme Court heightened the defendant's

1

burden to prove apparent authority. *Id.* at *18-19. As it stands now, Pennsylvania law requires that a defendant moving to compel arbitration prove that the non-signatory spouse's words or conduct caused its employees to "reasonably believe" that the non-signatory spouse authorized the other to act on his or her behalf. *Id.* at *21-22.

Plaintiff LoVallo thus respectfully submits that if H&R Block's motion to compel arbitration were decided today, it would be denied for several reasons.

First, H&R Block's Online Services Agreement contained no provision that specified that Ms. LoVallo was entering into the agreement on behalf of her husband. Declaration of Eric Pasternack, Ex. B. Therefore, no "clear and unmistakable" intent to bind Mr. LoVallo to the Online Services Agreement can be found in its terms. *See Santiago*, 2025 Pa. LEXIS 1501, at *16-17. Mr. LoVallo is, as a result, not bound by the agreement as *Santiago* confirms that arbitration agreements "may not be extended by implication . . . as to the persons subject thereto." *Id.*

Second, with the Supreme Court having made clear that implied authority is limited to only those actions "necessary" to accomplish what

2

the non-signatory has "deliberately and specifically" authorized, Mr. LoVallo's declaration that he "did not specifically ask [Ms. LoVallo] to use H&R Block's services, and in fact, . . . had no preference or concern" as to how his wife would prepare and file their joint tax returns leaves H&R Block unable to show, as a matter of law, that Ms. LoVallo had such authority. *See Kirkham v. TaxAct, Inc.*, No. 24-1515, 2025 U.S. App. LEXIS 6975 (3d Cir. March 26, 2025) (finding that limited discovery should have been allowed where non-signatory spouse and defendant disputed whether signatory spouse had authority to enter into an arbitration agreement on behalf of the non-signatory spouse).

Third, because H&R Block had no prior dealings with Mr. LoVallo, it cannot show that his words or conduct led it to "reasonably believe" that Ms. LoVallo had apparent authority to enter into the Online Services Agreement on his behalf. H&R Block notably offers no evidence that it reasonably believed that Ms. LoVallo had authority to act on Mr. LoVallo's behalf at the time she allegedly entered into the Online Services Agreement. Pasternack Decl., Ex. F. H&R Block instead only asserts that in preparing their joint tax returns, Ms. LoVallo entered Mr. LoVallo's name, date of birth, social security number, as well as a

3

PIN code for Mr. LoVallo. *Id.*, Ex. D, ¶¶ 13-17 But H&R Block has made no effort to connect Ms. LoVallo's entry of such information with its claim that she had apparent authority. And it cannot, given that "[a]n agent cannot, simply by his own words, invest himself with apparent authority." *Santiago*, 2025 Pa. LEXIS 1501, at *18.

In view of the Supreme Court's *Santiago* decision, the July 3, 2024 Order should be vacated and the stay lifted as it pertains to Plaintiff LoVallo as H&R Block cannot establish that Ms. LoVallo had apparent authority to enter into the Online Services Agreement on his behalf.

## II.    Pertinent Developments in Pennsylvania Caselaw.
### A. *Santiago v. Philly Trampoline Park* (Pa. 2025)

In *Santiago v. Philly Trampoline Park*, the Pennsylvania Supreme Court heard appeals from Defendant Sky Zone in its attempt to enforce the arbitration provision in its "Participation Agreement, Release and Assumption of Risk" document (the "Sky Zone Agreement") against the spouses of two parents that had signed the Sky Zone Agreement on behalf of their minor children. 2025 Pa. LEXIS 1501, at *3-4. When Ms. Santiago signed the Sky Zone Agreement, she electronically signed the Agreement below the following statement:

4

> **I am entering this agreement on behalf of myself, my spouse, or domestic partner, the Child,** and our respective and/or collective issue, parents, siblings, heirs, assigns, personal representatives, estate(s), and anyone else who can claim by or through such person or persons (collectively, the "Releasing Parties").

*Id.* (emphasis added). Sky Zone argued from this that Mr. Santiago should be compelled to arbitration because "Ms. and Mr. Santiago were married at the time of the incident and that the Agreement contained a provision stating that its terms applied not only to her, but 'her spouse or domestic partner' as well." *Id.* at *19.

In further arguing that Ms. Santiago had implied authority, Sky Zone cited testimony from Ms. Santiago that "she did not need Mr. Santiago's permission to take their daughter to Sky Zone." *Id.* at *19-20. Sky Zone also pointed to testimony from Mr. Santiago that "he did not know Ms. Santiago took their child to its facility on the date in question and that he did not tell Ms. Santiago that she could not take their child there." *Id.* at *20. According to Sky Zone, this demonstrated that Mr. Santiago, "through his prior conduct, bestowed upon [Ms. Santiago] implied authority to take [their daughter] to participate in recreational activities and, in doing so, allowed [her] to take the steps necessary to facilitate such participation, which in this case included signing the

5

Agreement." *Id.* The Pennsylvania Supreme Court rejected this argument, reasoning that authority is implied only "when it is needed to allow an agent to act on a grant of express authority." *Id.* (citing *Washburn v. N. Health Facilities, Inc.*, 121 A.3d 1008, 1012 (Pa. Super. 2015)). As the Court explained, "Sky Zone makes no argument for express authority, nor could it, as there is no evidence that Mr. Santiago *'deliberately and specifically'* authorized Ms. Santiago to take their child to Sky Zone." *Id.* (emphasis added).

Sky Zone also argued that Ms. Santiago had apparent authority because it was reasonable "to believe that Mr. Santiago authorized Ms. Santiago to sign the Agreement on his behalf." *Id.* at *20-21. The Supreme Court thought this argument curious given that "Sky Zone point[ed] only to omissions in Mr. Santiago's testimony in support of its claim, arguing that Mr. Santiago 'did not testify that he did anything to make [Sky Zone] aware that [Ms. Santiago] was acting without authority when she signed the Agreement on his behalf." *Id.* at *21. In rejecting Sky Zone's apparent authority argument, the Supreme Court observed that "apparent authority 'exists where the principal, by word or conduct, causes people with whom the alleged agent deals to believe

6

that the principal has granted the agent authority to act." *Id.* (quoting *Washburn*, 121 A.3d at 1012). The Supreme Court then explained that it was "at a loss as to how Mr. Santiago's failure to act could be construed as conduct that caused Sky Zone employees to reasonably believe that he authorized Ms. Santiago to act on his behalf." *Id.*

Then, addressing Sky Zone's marital agency argument, the Court recognized that the existence of a marital relationship could tip the scales in favor of finding agency where the same circumstances between strangers would not. *Id.* at *22 (citing *Sidle v. Kaufman*, 29 A.2d 77, 81 (Pa. 1942)). But as the Supreme Court observed, Sky Zone made "no effort to tie the Santiago's marital relationship to other conditions, acts, or conduct so as to permit a finding of agency where one would otherwise not be found." *Id.* at *23. To the contrary, as the Supreme Court observed, Sky Zone simply pointed "to the fact of their marriage and the portion of the Agreement that provides that it applies not only to Ms. Santiago, but her spouse as well." *Id.*

As for the Schultz family, Sky Zone made similar arguments, "pointing to the fact of their marriage and aspects of testimony that it believe[d] establish implied and apparent agency." *Id.* Sky Zone, for

7

instance, argued that implied agency could be found "because 'through her prior conduct,' Ms. Schultz 'bestowed upon [Mr. Schultz] implied authority to enter into participation agreements relating to recreational activities in which [their son] participated." *Id.* The Supreme Court found otherwise. It reasoned that "implied authority exists in connection with express authority; it is a legal fiction that extends a grant of agency to allow the agent to perform what is necessary to fulfill the tasks for which they have been granted express authority." *Id.* at *23-24 (citing *Washburn*, 121 A.3d at 1012). And so, the Supreme Court concluded that "Sky Zone's attempt to fabricate an on-going express agency for such a purpose fails" as there "is no evidence that Ms. Schultz ever expressly authorized Mr. Schultz to take their child to Sky Zone." *Id.*

The Supreme Court likewise rejected Sky Zone's argument that Mr. Schultz had apparent authority to bind his wife. As it had with the Santiagos, Sky Zone argued that "Ms. Shultz's failure to take such action 'led [Sky Zone's employees to reasonably believe that [Mr. Schultz] had authority bring [Rocco] to the facility and, in so doing, had the authority to sign the [Agreement] on [her] behalf." *Id.* at *24. The

8

Supreme Court however recognized that "[a] failure to act does not establish that Ms. Schultz, as the principal, 'by word or conduct, cause[d] people with whom the alleged agent deal[t] to believe that the principal has granted the agent authority to act.'" *Id.* (quoting *Washburn*, 121 A.3d at 1012). The Supreme Court thus rejected Sky Zone's apparent agency authority argument because there was "no evidence that Sky Zone's employees knew that Ms. Schultz existed, much less that she authorized Mr. Schultz to sign the Agreement on her behalf." *Id.* at *25.

### B. *Kirkham v. TaxAct Inc.* (3d Cir. 2025)

In another pixel privacy case bearing many similarities to the one at hand, plaintiff Matthew Sessoms—a non-signatory spouse—asserted in a declaration that while he gave his wife the authority to prepare and file his tax returns, he did not ask her to specifically use TaxAct, Inc.'s services and otherwise had no preference or concern as to what service she used. Pasternack Decl., Ex. E, ¶ 5. In denying TaxAct's motion to compel plaintiff Sessoms to arbitration, this Court held that "TaxAct has not pointed the Court to any sufficiently clear 'acts of participation, knowledge, or acquiescence by' her husband to carry its burden of

providing her apparent authority to bind her husband to the 2020

Terms of Service. *Kirkham v. TaxAct, Inc.*, No. 23-3303, 2024 U.S. Dist.

LEXIS 45814, *35 (E.D. Pa. Mar. 15, 2024), *vacated,* 2025 U.S. App.

LEXIS 6975 (3d Cir. Mar. 26, 2025). The Third Circuit later vacated

this Court's decision because "more factual development was needed"

which required "the District Court to permit limited discovery[.]"

*Kirkham v. TaxAct, Inc.*, No. 24-1515, 2025 U.S. App. LEXIS 6975, *4-5

(3d Cir. March 26, 2025). Thus, under facts nearly identical to those

here, the Third Circuit found additional, limited discovery necessary.

## III.  Procedural basis for Vacating the July 3, 2024 Order and Lifting the Stay.

The July 3, 2024 Order "adjudicates fewer than all the claims or

the rights and liabilities of fewer than all the parties" and therefore

"does not end the action as to any of the claims or parties and may be

revised at any time before the entry of a judgment adjudicating all the

claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b).

Because the "District Court has not yet entered a final judgment" here,

it may reconsider its previous orders under Rule 54(b) at any time.

*Brown v. City of Pittsburgh*, 586 F.3d 263, 298 (3d Cir. 2009); *see also*

*V.I. Water & Power v. GE Int'l*, 561 F. App'x 131, 134 (3d Cir. 2014)

(rulings on motions to compel arbitration are not dispositive as the district court retains "authority to dissolve any stay or make any orders effectuating arbitration awards"). This Court may therefore vacate the July 3, 2024 Order due to the intervening change in controlling Pennsylvania law. *N. River Ins. Co. v. Cigna Reins. Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995). And it should because only "parties to an arbitration agreement are subject to arbitration" as a result. *O'Hanlon v. Uber Tech., Inc.*, 990 F.3d 757, 766 (3d Cir. 2021) (quoting *Smay v. E.R. Stuebner, Inc.*, 864 A.2d 1266, 1271 (Pa. Super. Ct. 2004)).

## IV.   Argument

Because "state courts are the ultimate expositors of state law[,]" *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975), Plaintiff LoVallo submits that this Court should take notice of the Pennsylvania Supreme Court's recent decision in *Santiago v. Philly Trampoline Park*. And doing that, this Court should reverse the July 3, 2024 Order and lift the stay given that as it stands now, it can no longer be credibly argued under Pennsylvania law that Ms. LoVallo had authority—express, implied, or apparent—to bind her husband to H&R Block's arbitration agreement.

### A. H&R Block's arbitration agreement may not be extended by implication as to the persons subject thereto.

As the Supreme Court recognized in *Santiago*, "arbitration agreements are strictly construed and may not be extended by implication, either as to the persons subject thereto or the claims to be arbitrated." *Id.* at *16 (citing *Emmaus Mun. Auth. v. Eltz*, 204 A.2d 926, 927 (Pa. 1964)). "The parties' intent to arbitrate must be clear, for the '[t]erms of the agreement are not to be strained to discover it." *Id.* at *16-17 (quoting *Jacob v. Weisser*, 56 A. 1065, 1067 (Pa. 1904)).

In contrast to the matter here, when Ms. Santiago signed the Sky Zone Agreement, she did so expressly on behalf of her spouse. *Santiago*, 2025 Pa. LEXIs 1501, at *5-6. Yet according to the Supreme Court, that was not enough to create apparent agency. *Id.* at *23. The Online Services Agreement, unlike the one in *Santiago*, contains no provision that suggests that Ms. LoVallo entered into the Online Services Agreement on behalf of Mr. LoVallo. *See* Pasternack Decl., Ex. B, § 1.1 ("This Online Services Agreement ("Agreement") is a contract between you and HRB Digital LLC and HRB Tax Group, Inc."), § 14.19 ("All rights and benefits of this Agreement from H&R Block are intended solely for the original purchaser of the Products and Services."). Nor did

12

H&R Block's website contain a comparable statement during the sign-up process. See Pasternack Decl., Ex. F, Tab 2 ("I agree to the terms and conditions of the Electronic Communications Consent and the Online Services Agreement, which includes the requirement that any dispute be resolved through binding arbitration."); Ex. F, Tab 3 ("Error: You must agree to the Electronic Communications Consent, Online Services Agreement, and Privacy Notice.").

The lack of any such provision in the Online Services Agreement or H&R Block's website should thus end the matter given the Supreme Court's recognition that the intent to bind a spouse must be "clear and unmistakable" from the terms of the agreement. *Santiago*, 2025 Pa. LEXIS 1501, at *16-17.[1] This is because without a specific provision declaring that the user of H&R Block's services is entering into the Online Services Agreement on behalf of his or her spouse, there could

---

[1] In *Washburn*, Mrs. Washburn signed the stand-alone "Alternative Dispute Resolution Agreement" on behalf of her husband and, in fact, signed the agreement in a representative capacity on behalf of her husband. 121 A.3d at 1010-11. But as the Superior Court recognized, because there "were no prior dealings between Mr. Washburn and Tremont," there was "no basis to infer that she was authorized to act on his behalf." *Id.* at 1015.

not have been a "meeting of the minds" that Ms. LoVallo was entering

into the agreement on behalf of her husband. *Cf. Schreiber v. Olan

Mills*, 627 A.2d 806, 808 (Pa. 1993).

### B. There is no evidence that Mr. LoVallo "deliberately and specifically" authorized his wife to use H&R Block.

In the Opinion accompanying the July 3, 2024 Order, this Court

found that because Ms. LoVallo prepared and filed their joint tax

returns for three consecutive years, that "custom or habit" supports "a

finding that Ms. LoVallo was authorized to act as her husband's agent."

*See Caimano*, 2024 U.S. Dist. LEXIS 117820, at \*43. With the

Pennsylvania Supreme Court having however rejected that sort of

"habit or custom" evidence in *Santiago*, this Court should vacate the

July 3, 2024 Order and lift the stay as it pertains to Plaintiff LoVallo.

Sky Zone argued in *Santiago* that Mr. Schultz had implied

authority through Ms. Schultz's "prior conduct" and her testimony that

"she assumed that Mr. Schultz signed a participation agreement for

their son to participate" in other recreational activities. *Santiago*, 2025

Pa. LEXIS 1501, at \*23-24. In rejecting that argument, the Supreme

Court noted that "implied authority exists in connection with express

authority" and can allow an agent "to perform what is necessary to

14

fulfill the tasks for which they have been granted express authority." *Id.*
at *24. The Court thus found that because there was "no evidence that
Ms. Schultz ever expressly authorized Mr. Schultz to take their child to
Sky Zone"—and that is Sky Zone specifically—"Sky Zone's attempt to
fabricate an on-going express agency for such a purpose fails for lack of
factual support." *Id.* at *24.

In much the same manner, Sky Zone argued that the evidence
supports finding that Ms. Santiago had implied and apparent agency
given her testimony that "she did not need Mr. Santiago's permission to
take their daughter to Sky Zone." *Id.* at *20. Based on such testimony,
Sky Zone argued that "through his prior conduct," Mr. Santiago
"bestowed upon [Ms. Santiago] implied authority to take [their
daughter] to participate in recreational activities and, in so doing,
allowed [her] to take the steps necessary to facilitate such participation,
which in this case included signing the Agreement." *Id.* The Supreme
Court said that Sky Zone's argument "misunderstands the nature of
agency by implication" as there was "no evidence that Mr. Santiago
"deliberately and specifically" authorized his wife "to take their child to
Sky Zone." *Id.*

There is no evidence here that Mr. LoVallo "expressly authorized" his wife to use H&R Block's tax preparation and filing services or that as a matter habit and custom, Ms. LoVallo had authority to transact all his business affairs. To the contrary, Mr. LoVallo declared that while he "understood that [Ms. LoVallo] was preparing [their] tax return, [he] did not ask her to specifically use H&R Block's services and, in fact, . . . had no preference or concern to what service she used—whether that be H&R Block or one of its competitors or even [if] it was an online service." Pasternack Decl., Ex. C, ¶ 5. In other words, there is no evidence that Mr. LoVallo "deliberately and specifically" authorized Ms. LoVallo to use H&R Block's services.[2]

---

[2] Plaintiff LoVallo respectfully suggests that the Court's reliance on *Soni v. Commissioner*, 76 F.4th 49 (2d Cir. 2023) was misplaced. The Second Circuit found implied authority because one spouse relied on the other "to handle financial and tax matters"—that is, according to the Second Circuit, "Anjali gave Om implied authority to handle any tax matter pertaining to her." *Id.* at 61. The Second Circuit did not consider the necessity of allowing the agent to "handle any tax matter pertaining" to Om and thus, reflects a view of agency law expressly rejected by the Pennsylvania Supreme Court. And distinguishing matters even further, the Sonis did not contest the Tax Court's factual findings. *Id.* Plaintiff LoVallo, in contrast, does contest the Court's factual findings.

Because Pennsylvania law only allows an agent "to perform what is ***necessary*** to fulfill the tasks for which they have been granted express authority," *Santiago*, 2025 Pa. LEXIS 1501, at \*24 (emphasis added), Mr. LoVallo's grant of authority to his wife to prepare and file their joint tax returns only allowed her to do what was necessary to accomplish the task. And that by no means extended to entering into H&R Block's Online Services Agreement, just as bestowing on one's spouse the authority to enter into participation agreements for some recreational activities does not imply a general grant of authority for that spouse to enter into other agreements for other recreational activities. *See Santiago*, 2025 Pa. LEXIS 1501, at \*23-24. So while Ms. LoVallo may have found it convenient to use H&R Block's do-it-yourself platform, her use of that platform—even repeatedly—was not necessary given that Mr. LoVallo had no preference or concern to what service she used or even if she used one. Implied authority cannot be found here, as a result.

17

**C. No facts have been presented that Mr. LoVallo, by words or conduct, led H&R Block to reasonably believe that he had granted his wife the authority to enter into the Online Services Agreement on his behalf.**

According to the Supreme Court, "apparent authority 'exists [only] where the principal, by word or conduct, causes people with whom the alleged agent deals to believe that the principal has granted the agent authority to act." *Santiago*, 2025 Pa. LEXIS 1501, at *18-19. Recognizing that fundament, the Supreme Court held that Sky Zone had failed to carry its burden to show that Ms. Santiago and Mr. Schultz had apparent authority to bind their respective spouses. For the same reasons now, this Court should find that Ms. LoVallo did not have apparent authority to bind her husband to the Online Services Agreement.

In the case of the Santiagos, it reasoned that Sky Zone had pointed only to "omissions" in Mr. Santiago's testimony, arguing that he "did not testify that he did anything to make [Sky Zone] aware that [Ms. Santiago] was acting without authority when she signed the Agreement on his behalf." *Id.* at *21. The Supreme Court explained that it was "at a loss" to see how Mr. Santiago's "failure to act could be construed as conduct caused Sky Zone employees to reasonably believe

18

that he authorized Ms. Santiago to act on his behalf." *Id.* The Supreme

Court moreover stressed incredility at Sky Zone's position, nothing that

he could not have been expected to inform Sky Zone that Ms. Santiago

did not have his authority when "he did not know that she was going

there." *Id.* at *21-22.

With respect to whether Mr. Schultz had apparent authority, the

Supreme Court again stressed that Ms. Schultz's "failure to take action"

could not have led Sky Zone's employees to "reasonably believe" that

Mr. Schultz had authority. *Id.* at *24. As the Court explained, "[a]

failure to act does not establish that Ms. Schultz, as the principal, 'by

word or conduct, cause[d] people with whom the agent deal[t] to believe

that the principal has granted the agent authority to act." *Id.* at *24

(citing *Washburn*, 121 A.3d at 1012).

The record here is devoid of any evidence that would have led

H&R Block to reasonably believe that Ms. LoVallo had apparent

authority. For starters, there is no evidence of "prior dealings" between

Mr. LoVallo and H&R Block from which H&R Block could infer that Ms.

LoVallo was authorized to act on his behalf. *See Washburn*, 121 A.3d at

1015 ("There were no prior dealings between Mr. Washburn and

Tremount"); *Mcllwain v. Saber Healthcare Grp., Inc.*, 208 A.3d 478, 486 (Pa. Super. 2019) ("Saber has not alleged Franks was present when Mcllain signed the arbitration agreement or gave express consent to Mcllwain to sign the agreement on his behalf).

Lacking any direct dealings with Mr. LoVallo, H&R Block offered a declaration from Valerie Schuessler. Pasternack Decl, Ex. D. She does not however claim that Mr. LoVallo, by his own words or actions, led H&R Block to believe that Ms. LoVallo had apparent authority. *Id.*, generally. *Cf. Santiago*, 2025 Pa. LEXIS 1501, at *24-25 ("There is no evidence that Sky Zone's employees knew that Ms. Schutlz existed, much less that she authorized Mr. Schultz to sign the Agreement on her behalf"); *Mcllwain*, 208 A.3d at 486 ("As it is clear that Saber did not rely on the words or conduct of Franks, no apparent authority exists").

Instead, without ever claiming that H&R Block believed that Mr. LoVallo had apparent authority, Ms. Schuessler notes that after starting the tax preparation process, Ms. LoVallo had to enter her husband's name and date of birth as well as his social security or tax identification number. Pasternack Decl., Ex. D, ¶¶ 13-15. She also states that "[a]fter completing the federal joint tax return, both spouses

20

are required to digitally sign the return by creating and entering a five-digit number for each spouse." *Id.*, ¶ 16. As she concedes though, that screen only "presents the spouses with an acknowledgment that 'Under penalty of perjury, I declare I've examined this return, including any accompanying statements and schedules, and, to the best of my knowledge and belief, it is true, complete and accurate." *Id.* So although Ms. LoVallo filled Mr. LoVallo's information into H&R Block's forms, "an agent cannot simply, by her own words, invest herself with apparent authority." *McIlwain*, 208 A.3d at 486. Nor can it be "inferred from mere relationships or family ties." *Wisler v. Manor Care of Lancaster PA, LLC*, 124 A.3d 317, 323 (Pa. Super. 2015). It was therefore incumbent on H&R Block to "take notice of the nature and extent of the authority conferred." *Id.* at 324. H&R Block "neglected to do so at its own peril." *McIlwain*, 208 A.3d at 486.

H&R Block has thus identified no "words of conduct" of Mr. LoVallo that would have led it to believe that Ms. LoVallo had apparent authority, reasonable or not. So with the Pennsylvania Supreme Court having now clarified that a defendant seeking to compel arbitration bears the burden of proving that the non-signatory spouse by "words or

21

conduct" led it to "reasonably believe" that the signatory spouse had apparent authority, the equities require that the July 3, 2024 Order be vacated and the stay lifted as to Plaintiff LoVallo.

## V.    Conclusion

For all these reasons, the July 3, 2024 Order should be vacated and the stay lifted as it pertains to Plaintiff LoVallo

Respectfully submitted,

COHEN, PLACITELLA & ROTH, P.C.

By:    /s/ Eric S. Pasternack

James P. Goslee (#203043)
Michael Coren (#31037)
Eric S. Pasternack (#320127)
Jared M. Placitella (#321333)
2001 Market St., Suite 2900
Philadelphia, PA 19103
(215) 567-3500
jgoslee@cprlaw.com
mcoren@cprlaw.com
epasternack@cprlaw.com
jmplacitella@cprlaw.com

Dated: September 30, 2025