IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RONI SUE CAIMANO, on behalf of herself and all others similarly situated, and | : <br> : <br> : Civil Action No. 23-cv-3272 <br> : |
| FRANK LOVALLO, on behalf of himself and all others similarly situated, | : Jury Trial Demanded <br> : <br> : <br> : |
| Plaintiffs, | : <br> : |
| v. | : <br> : |
| HRB DIGITAL LLC. and HRB TAX GROUP, INC., | : <br> : <br> : |
| Defendants. | : |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF LOVALLO'S MOTION TO VACATE THE JULY 3, 2024 ORDER AND TO LIFT THE STAY AS IT PERTAINS TO HIM BECAUSE OF A CHANGE IN PENNSYLVANIA LAW**

COHEN, PLACITELLA & ROTH, P.C.
James P. Goslee (#203043)
Michael Coren (#31037)
Eric S. Pasternack (#320127)
Jared M. Placitella (#321333)
2001 Market St., Suite 2900
Philadelphia, PA 19103
(215) 567-3500
jgoslee@cprlaw.com
mcoren@cprlaw.com
epasternack@cprlaw.com
jmplacitella@cprlaw.com

# **TABLE OF CONTENTS**

I. Introduction ................................................................................... 1

II. Argument ...................................................................................... 3

    A.   *Santiago* narrowed the circumstances under which implied authority may be found. .......................................................... 3

    B.   *Santiago* changed Pennsylvania law on apparent authority.. 7

III. Conclusion ................................................................................. 10

# TABLE OF AUTHORITIES

## Cases

*Caimano v. H&R Block*,
  2024 U.S. Dist. LEXIS 117820 (E.D. Pa. July 3, 2024) ..................... 3, 6

*Santiago v. Philly Trampoline Park, LLC*,
  2025 Pa. LEXIS 1501 (Pa. 2025) ................................................. passim

*Washburn v. North Health Facilities*,
  121 A.3d 1008 (Pa. Super. 2015) ............................................. 3, 4, 5, 7

I.   Introduction

The Pennsylvania Supreme Court's decision in *Santiago v. Philly Trampoline Park, LLC*, 2025 Pa. LEXIS 1501 (Pa. 2025), materially altered Pennsylvania agency law. Although the Court assured that "Pennsylvania law on agency is clear" in its decision, *id.* at *26, what followed tightened the evidentiary standards and heightened the burden that the party seeking to compel a non-signatory to arbitration must satisfy. *Santiago*, more specifically, narrowed how agency may be proven in the arbitration context, linking implied authority more closely to express authority and imposing a more demanding, objective standard for apparent authority.

The Court grounded this change in a longstanding interpretive principle: "arbitration agreements are strictly construed and may not be extended by implication, either as to the persons subject thereto or the claims to be arbitrated." *Id.* at *16 (internal citations omitted). That rule of strict construction informed each step of the Court's analysis. Whether addressing express, implied, or apparent authority, it insisted that a party's consent to arbitrate must be proven through deliberate

1

and specific authorization—not inferred from custom, habit, or convenience.

Under that framework, reconsideration is required. First, this Court found implied agency because of Ms. LoVallo's "custom or habit" of filing joint tax returns. *Santiago* however clarified that implied agency cannot rest on prior conduct or convenience; it rather only arises when necessary to carry out a deliberate and specific grant of express authority. Because nothing in the record shows that Ms. LoVallo needed to use H&R Block to prepare and file their joint tax returns, implied authority cannot be found. Second, this Court concluded that Mr. LoVallo's conduct caused H&R Block to believe that Ms. LoVallo had authority. The record is however devoid of evidence that H&R Block contemporaneously believed that she had such authority. H&R Block's declarant, Valerie Schuessler, indeed never claimed that H&R Block did. Pasternack Decl., Ex. D. It would have moreover been unreasonable for H&R Block to hold that belief, as Ms. LoVallo entered her husband's identifying information and electronic signature only after she has already allegedly accepted the Online Services Agreement.

Because H&R Block cannot satisfy the heightened legal standards governing implied and apparent agency on the present record, the July 3, 2024 Order should therefore be vacated and the stay lifted as it pertains to Plaintiff LoVallo

## II. Argument

### A. *Santiago* narrowed the circumstances under which implied authority may be found.

*Santiago* marked a substantive shift in Pennsylvania law from *Washburn v. North Health Facilities*, 121 A.3d 1008 (Pa. Super. 2015). In *Washburn*, the Superior Court stated that comment b to the Restatement (Second) of Agency § 22 "suggests that one spouse's custom or habit in acting for the other may imply the necessary apparent authority." *Washburn*, 121 A.3d at 1013. Citing that statement, this Court observed that "[a]pparent authority may be implied by a spouse's 'custom or habit' in carrying out tasks or acting for the other spouse." *Caimano v. H&R Block*, 2024 U.S. Dist. LEXIS 117820, at *42-43 (E.D. Pa. July 3, 2024). This Court then relied on *Soni v. Commissioner*, 76 F.4th 49 (2d Cir. 2023), for the proposition that when one spouse filed a tax return on behalf of the other "with the consent and intent that the spouse would handle all matters related to the tax return," the "agency

3

relationship encompassed 'all matters pertaining to the [tax] [r]eturn." *Caimano*, 2024 U.S. Dist. LEXIS 117820, at *42-43. After *Santiago*, that inference cannot be sustained.

The Pennsylvania Supreme Court quoted *Washburn* in defining express, implied, and apparent authority in *Santiago*. It recognized that express authority exists when the principal "deliberately and specifically grants authority to the agent as to certain matters." *Santiago*, 2025 Pa. LEXIS 1501, at *18-19 (citing *Washburn*, 121 A.3d at 1012). The Court explained that implied authority "is found where an agent's actions are necessary to carry out agency by express authority," and that "apparent authority 'exists where the principal, by word or conduct, causes people with whom the alleged agent deals to believe that the principle has granted the agent authority to act.'" *Santiago*, 2025 Pa. LEXIS 1501, at *18-19 (citing *Washburn*, 121 A.3d at 1012).

Turning to the dispute before it, the Court found that "because there [was] no evidence that Mr. Santiago 'deliberately and specifically' authorized Ms. Santiago to take their child to Sky Zone," "there can be no finding of implied authority to sign the Agreement on his behalf." *Id*. at *20. As for the Schultz family, the Court rejected the notion that

4

implied authority could be found "through [Ms. Schultz's] prior conduct." *Id.* at *23-24. It explained that "implied authority exists in connection with express authority; it is a legal fiction that extends a grant of agency to allow the agent to perform what is necessary to fulfill the tasks for which they have been granted express authority." *Id.*

By coupling express and implied authority this way, the Supreme Court made implied authority strictly derivative of express authority, tightening their logical dependency and narrowing the circumstances under which implied authority can be found. Under *Washburn*, those categories were conceptually distinct and thus allowed implied authority to be found based on "one spouse's custom or habit"; after *Santiago*, implied authority arises only to effectuate a deliberate and specific grant of express authority.

That change is dispositive here. H&R Block's theory—and this Court's earlier ruling—rested on the premise that Ms. LoVallo had implied authority given her "custom or habit" of filing their joint tax returns. *Santiago* forecloses that conclusion. Absent a deliberate grant of authority from Mr. LoVallo specifically directing her to use H&R Block's do-it-yourself platform, implied authority cannot be found here

5

even if using H&R Block's do-it-yourself platform would have been convenient for Ms. LoVallo and consistent with their past practice. *See Santiago*, 2025 Pa. LEXIS 1501, at *23-24.

Under *Santiago*, H&R Block had to identify evidence that Ms. LoVallo's use of H&R Block was "necessary" to carry out a deliberate and specific grant of express authority. It has not carried that burden and still fails to offer any rebuttal to Mr. LoVallo's declaration that while he gave his wife the authority to prepare and file his tax returns, he did not ask her to specifically use TaxAct, Inc.'s services and otherwise had no preference or concern as to what service she used. Pasternack Decl., Ex. C, ¶ 5. H&R Block instead argues that Plaintiff made this exact argument in his opposition to H&R Block's motion to compel. That only confirms its inability to respond on the merits. And because *Santiago* held that implied authority can only be found when "needed" to allow the agent to carry out a grant of authority "deliberately and specifically" authorized, *Santiago*, 2025 Pa. LEXIS 1501, at *20, the omission of that requirement from this Court's analysis requires correction. *Caimano*, 2024 U.S. Dist. LEXIS 117820, at *43-45.

6

### B. *Santiago* changed Pennsylvania law on apparent authority.

*Santiago* also shifted the law in Pennsylvania on apparent agency. In *Washburn*, the Superior Court observed that apparent agency "exists where the principal, by word or conduct, causes people with whom the alleged agent deals to believe that the principle has granted the agent authority to act." 121 A.3d at 1012 (internal citations omitted). In applying that definition, the Superior Court focused almost exclusively on the third-party's belief—that is, whether the nursing home operator believed that the decedent's wife had authority to sign the agreement. *Id.* at 1014-15. The result was a largely subjective standard: if the third-party genuinely believe that the agent had authority, that belief could suffice.

In *Santiago*, the Court started its analysis by similarly defining apparent agency, explaining that it "exists where the principal, by word or conduct, causes people with whom ethe alleged agent deals to believe that the principle has granted the agent authority to act." *Santiago*, 2025 Pa. LEXIS 1501, at *21 (quoting *Washburn*, 121 A.3d at 1012). But it clarified that the "conduct" must cause a reasonable belief that the agent was authorized to act on behalf of the principal. The Court

7

indeed emphasized that it was "at a loss as to how Mr. Santiago's failure to act could be construed as conduct that caused Sky Zone employees to reasonably believe that he authorized Ms. Santiago to act on his behalf." *Id.* In this way, the Court changed the inquiry from a subjective belief to an objective one: it is no longer enough for the third party to believe that the supposed agent had authority; that belief must be objectively reasonable and caused by the principal's own words and conduct, not the agent's. This clarification raises the evidentiary bar and represents a meaningful shift in the controlling law.

In seeking to compel arbitration, Sky Zone relied on the fact that when she signed the Arbitration Agreement, Ms. Santiago signed a provision that provided that she was entering the agreement on behalf of herself and her "spouse." *Santiago*, 2025 Pa. LEXIS 1501, at *5-6. Based on Mr. Santiago's failure to do "anything to make [Sky Zone] aware that [Ms. Santiago] was acting without authority, Sky Zone argued that Mr. Santiago's conduct caused its employees to reasonably believe that he authorized Ms. Santiago to act on his behalf given his failure to repudiate the arbitration agreement that Ms. Santiago specifically signed on his behalf. *Santiago*, 2025 Pa. LEXIS 1501, at

8

\*21. The Court rejected this argument, reasoning that "[o]ne wonders how Mr. Santiago could be expected to inform Sky Zone that Ms. Santiago was acting without his authority if he did not know that she was going there." *Id.* at \*21-22. Similarly, with respect to the Schultzes, the Court found Sky Zone's belief that Mr. Schutlz had authority to bind his wife to the Arbitration Agreement unreasonable given the lack of "evidence that Sky Zone's employees knew that Ms. Schultz existed, much less that she authorized Mr. Schultz to sign the Agreement on her behalf." *Id.* at \*24-25.

The same analysis governs here. In granting H&R Block's motion to compel arbitration, this Court did not address whether H&R Block had a reasonable basis to believe that Ms. LoVallo had apparent authority to sign the Online Services Agreement on behalf of her husband as Pennsylvania law now requires following *Santiago*. The record here is moreover devoid of evidence that H&R Block could rely on to satisfy its burden. The company's declarant, Valerie Schuessler, does not claim that Mr. LoVallo ever directly communicated with H&R Block or engaged in any conduct directed toward the company that could serve as the basis for a belief that he had authorized Ms. LoVallo

9

to sign the Online Services Agreement on his behalf. Nor does she assert that H&R Block actually held such a belief at the time. Her declaration merely describes the technical steps Ms. LoVallo took to enter her husband's identifying information and electronic signature for their joint tax return after she had already allegedly signed the Online Services Agreement. Pasternack Decl., Ex. D, pg. 6. Furthermore, unlike the agreement in *Santiago*—which expressly stated that Ms. Santiago was signing it on behalf of her spouse—the Online Services Agreement contained no comparable representation. Under the stricter, objective standard that *Santiago* prescribes, the record therefore provides no basis for finding apparent authority here.

### III.  Conclusion

    For all these reasons, the July 3, 2024 Order should be vacated and the stay lifted as it pertains to Plaintiff LoVallo

                                      Respectfully submitted,

                                      COHEN, PLACITELLA & ROTH, P.C.

                              By:   /s/ Eric S. Pasternack

                                      James P. Goslee (#203043)
                                      Michael Coren (#31037)
                                      Eric S. Pasternack (#320127)
                                      Jared M. Placitella (#321333)
                                      2001 Market St., Suite 2900
                                      Philadelphia, PA 19103
                                      (215) 567-3500
                                      jgoslee@cprlaw.com
                                      mcoren@cprlaw.com
                                      epasternack@cprlaw.com
                                      jmplacitella@cprlaw.com

Dated: November 11, 2025